TALLAMON & DESSOMMES *v* ANTONIO CARDENAS.

The 9th section of the Act of 1855, repeals the Acts of 1840 and 1847, modifying the 212th Art. of the Code of Practice, relative to the arrest of debtors about to leave the State, but expressly declares that the Act is not intended to repeal the provisions of the C. P. on the subject.

The provision of the 3d section of the Act of 1855, that no non-resident shall be arrested in this State except he has absconded from his residence, must give way to the 212th Art. C. P. in the case of a foreign debtor about permanently leaving the State.

The repeal of a repealing law does not revive the first law unless it be so particularly expressed. C. C. 22 and 23, and the same rule may be laid down as to the amendment of laws, which is but a partial repeal.

APPEAL from the Third District Court of New Orleans, *Duvigneaud,* J. *J. L. Tissot,* for plaintiffs and appellants.   *C. Dufour,* for defendant.

VOORHIES, J.   The question presented for adjudication in this case is, whether a non-resident debtor residing in a foreign country, can be arrested under the provisions of the Article 212 of the Code of Practice, as amended by the Acts of 1840 and 1847, when about leaving this State permanently.   There would be no difficulty in this matter, were it not for the 3d section of the Act of 1855, (p. 42), which reads : " that no non-resident shall be arrested in this State, at the suit of a resident or non-resident creditor, except in cases where it shall be made to appear by the oath of the creditor that the debtor has absconded from his residence."

This Act, of which the above is one of the sections, is entitled *An Act relative to persons arrested and imprisoned for debt;* and, in its last section, repeals " all laws or parts of laws conflicting with the provisions of this Act, and all laws on the same subject-matter except what is contained in the Civil Code and Code of Practice." Sec. 9.   The provisions of the Act of 1840 and 1847, which relate to the subject-matter under consideration, are consequently repealed notwithstanding the discrepancy which exists in the French and English texts of the 3d section of the Act of 1855.   The English text prevails.

The 212th Art. C. P. gave the right of arrest to any creditor, whose debtor was about to leave the State, even for a limited time.   This last clause was modified by the Act of 1840, so as to apply only to debtors about departing permanently from the State.   Another modification was introduced by the Act of 1847, p. 63, sec. 1, with regard to debtors, who were citizens of another State ; they were subject to arrest only in case they absconded from their residence.   In giving effect to the Article of the Code as amended by these two statutes, the rule was that any creditor had the right to arrest any debtor about departing permanently from the State, except when such debtor was a citizen of another State, in which case the right of arrest accrued only when the latter debtor absconded from his residence.   A non-resident debtor from a foreign country might therefore be arrested although not absconding, when about to leave the State permanently ; so much was left then of Art. 212 C. P., after the restrictions imposed by the Acts of 1840 and 1847.

From this it will appear that the section 3d of the Act of 1855 is in conflict with the Article 212 of the Code of Practice upon the subject of the arrest of

foreign debtors; and yet the 9th section provides expressly that the Act is not intended to repeal the provisions in the Code of Practice. In order to give effect to both, the rule might be laid down that a foreign debtor may be arrested in two events; 1st, when about permanently leaving the State; 2d, when absconding from his residence. But that provision of the 3d section of the Act of 1855, which reads, that no non-resident shall be arrested in this State except he has absconded from his residence, must give way to the 212th Art. C. P. in case of a foreign debtor about permanently leaving this State.

In thus giving effect to the Art. 212 C. P , it has not escaped the attention of the court that the Act of 1855 has repealed the two Acts of the Legislature amending that Article, and that the repeal of these two Acts has not re-instated the Article of the Code of Practice in its original state. " The repeal of a repealing law does not revive the first law, unless it be so particularly expressed." C. C. 22 and 23. And the same rule may be laid down as to the amendment of laws, which, after all, is often but a partial repeal.

It is, therefore, ordered, adjudged and decreed, that the judgment of the District Court be avoided and reversed.

It is further ordered, that the plaintiffs do have judgment against the defendant *Antonio Cardenas*, for the sum of six hundred and three dollars, with legal interest thereon from the twenty-third day of November, A. D., 1857, till paid.

It is further ordered, that the decree quashing the writ of arrest, issued on behalf of the plaintiffs against the defendant *Antonio Cardenas*, be set aside and annulled; and that the plaintiff's right of recourse on the bond furnished for his appearance by the said *Antonio Cardenas*, with *Paul Pouillot* as his security, be, and is hereby recognised.

It is further ordered, that the defendant pay the costs in both courts.

LAND, J., took no part in this case.

MERRICK, C. J., dissenting. It seems to me that the third section of the Act of 1855 has enlarged the Acts of 1840 and 1847. The term non-resident must be intended to mean any person residing in other States of this Union or foreign countries. I can see no other motive for the change of phraseology in the revised statute. See Acts 1840, p. 133, sec. 9 ; 1847, p. 63 ; 1855, p. 42.

The Act of 1855 cannot be made to yield to any former legislation, whether contained in the Code of Practice or not. *Lex posterior derogat priori.* See 1 Bouvier Inst. 42-43.

The Act of 1855, was the last expression of the legislative will, and being express, all former laws in opposition thereto must, under the ordinary rules of interpretation give way. It could hardly be supposed that the Legislature which had taken the trouble to declare explicitly its will, would have made the same subject to any law, which it had power to repeal and annihilate.

But in the instance before us they have expressly repealed all laws in conflict with the Act, as well those contained in the Code of Practice, as elsewhere. All that is required to make this evident is to punctuate the repealing clause according to the rules of interpretation.

The section should read as follows :

Sec. 9. " Be it enacted, &c., That all laws conflicting with this Act, and all laws on the same subject-matter except what is contained in the Civil Code and the Code of Practice, be repealed."

Here then, are repealed all laws *in conflict* with the Act, also all laws on the *same subject-matter*, except what is contained in the Civil Code and Code of Practice.

The lawgiver was reducing the laws to a code. The last expression of his will on this subject, was the Act in question. The citizen and magistrate was not to regard any other law on the subject except contained in the Civil Code and Code of Practice. *Holmes* v. *Wiltz*, 11 An.

I think the judgment should be affirmed.

---

## SAME CASE—ON A RE-HEARING.

VOORHIES, J. Upon a re-examination of this case, we have come to the conclusion that the former decree should be amended, for the purpose of having the case tried on the merits.

It is, therefore, ordered and decreed, that the judgment heretofore rendered by the court, be amended so as to read as follows, to-wit : That the judgment of the District Court be avoided and reversed; that the decree quashing the writ of arrest, issued on behalf the plaintiffs against the defendant *Cardenas*, be set aside and annulled, and that this case be remanded for further proceedings, the defendant paying the costs of appeal.

MERRICK, C. J., adhered to his former opinion.

LAND, J., absent.