## UNITED STATES EX REL. FRIZZELL *v.* NEWMAN.

QUO WARRANTO; "PERSON INTERESTED;" MOTIVE; STATUTES; OFFICERS; APPOINTMENT; EXECUTIVE DISCRETION; REMOVAL.

1. A citizen and taxpayer, as well as a claimant of the office, is a "person interested" whom sec. 1540, D. C. Code [31 Stat. at L. 1420, chap. 854], authorizes to apply, upon the refusal of the attorney general and the district attorney to act, for leave to have a writ of quo

warranto issued against the usurper of an office, though sec. 1539 authorizes the attorney general or district attorney to institute such a proceeding upon the relation of "a third person," since Congress must be deemed to have intended to use the words as generally construed in such acts; "third person" as meaning person interested, and "person interested" as not confined to persons interested in the office, and especially since an absence of intention to limit relators to claimants is shown by sec. 1541, providing that when the proceeding is against the usurper on the relation of a person claiming the same office, the relator must set forth the facts upon whi h he bases his claim.   (Chief Justice SHEPARD dissenting.)

2. Interested persons on their own application, and not the attorney general and district attorney exclusively, are authorized to resort to quo warranto against the usurper of a public office as distinguished from an office in a domestic corporation, by the provisions in the D. C. Code authorizing (sec. 1538) the writ to be issued against the usurper of either of such offices, empowering (sec. 1539) the attorney general or district attorney to institute the proceedings on his own motion or upon the relation of a third person, and providing (sec. 1540) that if the attorney general and district attorney refuse to act, a person interested may apply by verified petition, for leave to have the writ issued; and that if, in the opinion of the court, the reasons set forth in the petition are sufficient in law, the writ shall be allowed to be issued by any attorney in prescribed form.

3. In determining the sufficiency of the reasons set forth in the petition under sec. 1540, D. C. Code, authorizing the court to allow a quo warranto to be issued against the usurper of an office upon the application of a person interested, if in the opinion of the court the reasons set forth in the petition are sufficient in law, the court may inquire into the intent and motive of the party seeking the writ, as well as the sufficiency of the evidence offered by affidavit or otherwise, in support of the petition to establish probable cause for the allowance of the writ.

4. An individual citizen may sue to enforce the performance of a public duty or to restrain the violation of the public right.   (Citing *Downing* v. *Ross*, 1 App. D. C. 251.)

5. Where a quo warranto is sought upon the relation of a claimant of an office against an alleged usurper, the proceeding is for the enforcement of a private right; but where it is sought for the enforcement of a public right, the people become the real party, and the relator is only required to show that he is interested as a citizen in having the law executed and enforced.

6. The facts that all offices in the District of Columbia are appointive in

the same manner as those of the attorney general and district attorney, and that no one can have such an interest in an appointive office as would entitle him to enforce the same, requires sec. 1540, D. C. Code, permitting a person interested to apply for a quo warranto against the usurper of a public office if the attorney general and district attorney refuse to institute the proceedings, to be construed to authorize an application by a citizen and taxpayer though he is not a claimant of the office.

7. Where an executive officer of the government is vested with discretionary power in the execution of a law, the exercise of that discretion cannot be controlled by judicial process; and it is only where such an officer is charged by law with the performance of a ministerial act devoid of discretion, that the courts will intervene to command its performance or restrain its violation.

8. The appointing power of the President rests in his discretion, and his exercise thereof is not reviewable so long as it conforms to the limitations imposed by law.

9. A legal and judicial, rather than a political and executive, question is involved in an inquiry as to whether a person appointed commissioner of the District of Columbia was, for three years before his appointment, an actual resident of the district as required by the act of Congress of June 11, 1878 (20 Stat. at L. 103, chap. 180), which, in providing for the appointment of commissioners, does not impose upon the President and Senate the duty of determining from evidence taken, the qualifications of prospective appointees; and therefore no judicial invasion of the President's general discretion in making appointments to office occurs when a court authorizes the issuance of a writ of quo warranto to challenge upon the ground of lack of residential qualifications, an incumbent's right to the office.

10. No improper limitation upon the President's power to remove an officer whom he has appointed is imposed by permitting a citizen and taxpayer to institute a proceeding in quo warranto by which the right of an incumbent to hold the office of commissioner of the District of Columbia is sought to be challenged upon the ground that at the time of his appointment he had not been a resident of the District for the time acquired by the act of Congress of June 11, 1878 (20 Stat. at L. 103, chap. 180), relating to the appointment of commissioners.

No. 2623.   Submitted January 9, 1914.   Decided April 6, 1914.

HEARING on an appeal by the relator from a judgment of the Supreme Court of the District of Columbia dismissing his

petition for a writ of quo warranto to test the right of respondent to hold the office of Civil Commissioner of the District of Columbia.                                               *Reversed.*

The COURT in the opinion stated the facts as follows:

Relator, William J. Frizzell, by leave of court filed a petition praying for a writ of quo warranto to test the right of respondent, Oliver P. Newman, to hold the office of civil commissioner of the District of Columbia. The writ was accordingly issued, and for a return respondent demurred to the petition and moved to quash the writ. Upon hearing, the demurrer and motion were sustained, and from the judgment dismissing the petition and quashing the writ relator has appealed.

Relator, a citizen and taxpayer of the District of Columbia, challenges the right of respondent to hold the office of commissioner, to which he was appointed by the President, with the advice and consent of the Senate, upon the ground that he had not been an actual resident of the District for three years prior to his appointment, and that his appointment was therefore in violation of the following provision of the act of Congress, approved June 11, 1878 (20 Stat. at L. 103, chap. 180) : "The two persons appointed from civil life shall, at the time of their appointment, be citizens of the United States, and shall have been actual residents of the District of Columbia for three years next before their appointment, and have, during that period, claimed residence nowhere else."

The action was brought under chapter LI. of the District of Columbia Code [31 Stat. at L. 1419, chap. 854]. The following are the sections material to the consideration of this case:

"Sec. 1538. Against whom issued.—A quo warranto may be issued from the supreme court of the District in the name of the United States—

"First. Against a person who usurps, intrudes into, or unlawfully holds or exercises within the District a franchise or

public office, civil or military, or an office in any domestic corporation.

"Second.    Against any one or more persons who act as a corporation within the District without being duly authorized, or exercise within the District any corporate rights, privileges, or franchises not granted them by the laws in force in said District.

"And said proceedings shall be deemed a civil action.

"Sec. 1539.    Who may institute.—The attorney general or the district attorney may institute such proceeding on his own motion, or on the relation of a third person.    But such writ shall not be issued on the relation of a third person except by leave of the court, to be applied for by the relator, by a petition duly verified, setting forth the grounds of the application, or until the relator shall file a bond with sufficient surety, to be approved by the clerk of the court, in such penalty as the court may prescribe, conditioned for the payment by him of all costs incurred in the prosecution of the writ in case the same shall not be recovered from and paid by the defendant.

"Sec. 1540.    If attorney general and district attorney refuse.—If the attorney general and district attorney shall refuse to institute such proceeding on the request of a person interested, such person may apply to the court by verified petition for leave to have said writ issued; and if in the opinion of the court the reasons set forth in said petition are sufficient in law, the said writ shall be allowed to be issued by any attorney, in the name of the United States, on the relation of said interested person, on his compliance with the condition prescribed in the last section as to security for costs.

"Sec. 1541.    Relator claiming office.—When such proceeding is against a person for usurping an office, on the relation of a person claiming the same office, the relator shall set forth in his petition the facts upon which he claims to be entitled to the office."

*Mr. Joseph W. Bailey, Mr. Arthur A. Birney,* and *Mr. William J. Neale,* for the appellant:

1. The judgment that the writ should issue was final and conclusive. *Spilley* v. *Frost,* 15 Fed. 299, 305; *Buckles* v. *Chicago R. Co.* 53 Fed. 566; 24 Am. & Eng. Enc. Law, 819, 820.

2. The right to sue out the writ of quo warranto for usurpation of a public office is not confined tᴏ the law officers of the government. *Union P. R. Co.* v. *Hall,* 91 U. S. 343; *Downing* v. *Ross,* 1 App. D. C. 251, 253.

3. The relator, being a citizen and a taxpayer, is "a person interested" in this municipal office within the meaning of the Code. *Downing* v. *Ross,* 1 App. D. C. 251, 253; *Crampton* v. *Tabriskie,* 101 U. S. 601, 609; *Millard* v. *Roberts,* 25 App. D. C. 221, s. c. 202 U. S. 429, 438; Mechem, Pub. Off. § 490; 7 Lawson's Rights, Rem. & Proc. sec. 4012; High, Ex. Rem. §§ 701, 702; Paine, Elections, § 873; Throop, Pub. Officers, § 781; *State ex rel., etc.* v. *Martin,* 46 Conn. 479; *Hinckley* v. *Breen,* 55 Conn. 119; *State* v. *Vail,* 53 Mo. 97, 110; *Davis* v. *Dawson,* 90 Ga. 817; *Covatt* v. *Mason,* 101 Ga. 246; *People* v. *Londoner,* 13 Col. 303, 314, 6 L.R.A. 444; *State ex rel.* v. *Barker,* 116 Iowa, 89, 57 L.R.A. 244; *State* v. *Kohnke,* 109 La. 838, overruling 23 La. An. 25; *State* v. *Hall,* 111 N. C. 369; *State ex rel. Richards* v. *Hammer,* 42 N. J. L. 435; *State ex rel. Hann* v. *Bedell,* 67 N. J. L. 148; *Pike County* v. *People,* 11 Ill. 202; *State ex rel. Keliher* v. *Fordyce,* 115 Wis. 608; *State ex rel. William* v. *Samuelson,* 131 Wis. 499.

*Mr. Jackson H. Ralston, Mr. William E. Richardson, Mr. George W. Hott,* and *Mr. John W. Davis,* for the appellee:

1. Discretionary or judicial powers cannot, in the absence of statutory authority, be delegated. *Stockton* v. *Creanor,* 45 Cal. 643; *Young* v. *Black Hawk,* 66 Iowa, 460; *Morrow* v. *State,* 5 Kan. 563; *Hydes* v. *Joyes,* 4 Bush, 464, 96 Am. Dec. 311; *Maxwell* v. *Bay City Bridge Co.* 41 Mich. 453; *Matthews* v. *Alexandria,* 68 Mo. 115, 30 Am. Rep. 776; *Birdsall* v. *Clark,*

73 N. Y. 73; *State* v. *Bell,* 34 Ohio St. 194; *Clark* v. *Washington,* 12 Wheat. 41, 54; *Com.* v. *Smith,* 141 Mass. 140.

2. The Code gives no right to a private person under any circumstances to use the name of the United States in quo warranto against a public officer. *Barnum* v. *Gillman,* 27 Minn. 466; *State* v. *Dahl,* 69 Minn. 108; *People* v. *Grand River Bridge Co.* 13 Colo. 11; High, Extr. Rem. sec. 654; *Murphy* v. *Bank,* 20 Pa. 415; *State ex rel.* v. *Smith,* 32 Ind. 213; *State* v. *Stein,* 13 Neb. 530; *Robinson* v. *Jones,* 14 Fla. 256; *People ex rel.* v. *Atty. Gen.* 41 Mich. 728; *State* v. *Taylor,* 208 Mo. 442; *State ex inf. Folk* v. *Talty,* 166 Mo. 529; *People ex rel. etc.* v. *Healy,* 230 Ill. 280; *Thompson* v. *Watson,* 48 Ohio St. 552; *Everding* v. *McGinn,* 23 Or. 15.

3. The relator must be an "interested person" and under no circumstances has a taxpayer merely such an interest as to render him a proper person to bring quo warranto. *Stein Case,* 13 Neb. 529; *Demarest* v. *Wickham,* 63 N. Y. 320; *Miller* v. *Palermo,* 12 Kan. 14; *Com.* v. *Whistler,* 11 W. N. C. 513; *Com.* v. *McCarter,* 98 Pa. 607; *Com.* v. *Cluley,* 56 Pa. 272; *State* v. *Mason,* 14 La. Ann. 506; *State* v. *Matthews,* 44 W. Va. 372; *State* v. *Taylor,* 208 Mo. 442; *State ex rel. Folk* v. *Talty,* 166 Mo. 529.

4. The appointment of the respondent is for the term of three years, but during such period of three years he is subject to removal by the President at any time, and a writ of quo warranto will not lie in any instance where the appointee is at all times subject to removal by the appointing power. *Parsons* v. *United States,* 167 U. S. 324; *Shurtleff* v. *United States,* 189 U. S. 301; *State* v. *Sherman,* 51 Kan. 686; *Portman* v. *State Board,* 50 Mich. 258; *State* v. *Champlain,* 2 Bailey (S. C.) 223.

5. No inquiry was made by the court as to the motives of the relator, as should have been, to determine whether the discretion of the court should be exercised to permit the filing of the petition. *People ex rel.* v. *Keeling,* 4 Colo. 129; *People* v. *Schaupp,* 179 Ill. 305; *People* v. *Lake Street Elev. R. Co.* 54 Ill. App. 348, 363; *King* v. *Parry,* 6 Ad. & El. 820; *King* v.

*Trevenen,* 2 Barn. & Ald. 479; *Rex* v. *Cudlipp,* 6 T. R. 503; *Rex* v. *Benney,* 1 Barn. & Ald. 684; *Rex* v. *Dawes,* 1 W. B. L. 634; *Miller* v. *Seymour,* 67 N. J. L. 482, 51 Atl. 719; *Com.* v. *McCarter,* 98 Pa. 608; *State* v. *Hoff,* 88 Tex. 297.

5. The trial justice was entitled, notwithstanding order permitting suit to be filed, to review all legal questions presented herein. *Spitley* v. *Frost,* 15 Fed. 305; *Buckles* v. *Chicago, M. & St. P. R. Co.* 53 Fed. 567.

Mr. Justice VAN ORSDEL delivered the opinion of the Court:

The judgment of the court below is based upon two grounds: First, that the relator, as a citizen and taxpayer, is not an "interested person" within the meaning of the statute, and therefore has no legal standing to apply for the writ; and, second, even conceding that he has such standing, the dismissal of the petition must logically follow, "because it makes no showing that the determination by the President and the Senate as to the qualifications of the respondent was reached otherwise than in the exercise of a reasonable discretion, and, accordingly, their determination was final."

We shall consider these questions in their order. The statute provides three distinct methods by which the proceeding by quo warranto may be brought. It may be by either the attorney general or the district attorney on his own motion; or by either of them on the relation of a third person, by leave of court; or, upon the refusal of such officers to bring it at the request of a person interested, such person, by permission of the court, may institute the proceeding. We are unable to distinguish between the "third person" mentioned in sec. 1539 and the "person interested" mentioned in sec. 1540. Expressions in quo warranto statutes similar to the words "third person," used in sec. 1539, have been generally construed by the courts to mean person interested. The courts have also refused to limit the term, "person interested," to persons interested in the office. Hence, it is apparent that Congress,

having in mind the well-settled definitions of the terms em-
ployed, was referring to the same class of persons in sec. 1540,
which provides that, upon failure of the attorney general or
district attorney "to institute such proceeding on the request of
a person interested, such person may" proceed in his own behalf,
as was referred to in sec. 1539. That Congress did not intend
to limit persons interested to those interested in the office is
manifest from sec. 1541, which specifically provides a different
form of procedure "on the relation of a person claiming the
same office." Had such been the intention of Congress, some
reference would have been made therein to the preceding sec-
tion. Indeed, it may well be that the procedure in this section
applies only to a private, and not to a public, office; for the rea-
son that in this District, where all offices are appointive, there
cannot be two claimants to a public office.

The statute is general, in that it nowhere distinguishes be-
tween usurpers of public or private offices. The right of the
relator to have the writ issued depends wholly upon the discre-
tion of the court. In determining whether or not the reasons
set forth in the petition "are sufficient in law," the court un-
doubtedly may inquire into the interest and motives of the party
seeking the writ, as well as the sufficiency of the evidence offered
by affidavit, or otherwise, in support of the petition to establish
probable cause for the allowance of the writ. If it had been
intended to limit the right to inquire into the unlawful usurpa-
tion of a public office to the attorney general or the district at-
torney, the statute would have said so in terms. The fact that
no such expression is to be found in the statute must be accepted
as conclusive evidence that it was not intended.

It is settled law in this country that an individual citizen
may sue to enforce the performance of a public duty or to re-
strain the violation of a public right. *Union P. R. Co.* v. *Hall,*
91 U. S. 343, 23 L. ed. 428; *Downing* v. *Ross,* 1 App. D. C.
251. The statute, we think, was framed to accord with this
accepted theory of the law, and is in line with similar statutes
in the States of the Union, in the interpretation of which the
courts have followed the decisions of the English courts with

reference to the statute of 9 Ann. chap. 20, A. D. 1711. Upon refusal of the attorney general to act, the English cases are uniform in upholding the right of a citizen to maintain the action of quo warranto to inquire into the right of a municipal officer to hold office. *Rex* v. *White,* 5 Ad. & El. 613, 1 Nev. & P. 84, 2 Hurlst. & W. 403, 6 L. J. K. B. N. S. 23; *Rex* v. *Parry,* 6 Ad. & El. 810, 2 Nev. & P. 414; *Reg.* v. *Quayle,* 11 Ad. & El. 508, 5 Jur. 386; *Rex* v. *Clarke,* 1 East, 38, 5 Revised Rep. 505. Says High in his work on Extraordinary Legal Remedies, 2d ed. sec. 681: "The statute of Anne extended the remedy by quo warranto information, which had before been considered much in the nature of a prerogative one, to private citizens desiring to test the title of persons usurping or executing municipal offices and franchises, and rendered any person a competent relator in such proceedings who might first obtain leave of the court to file an information."

In the absence of an information by the proper prosecuting officer, who shall become the relator? The statute clearly reposes this power in someone. The "interested person" may be a relator claiming a right to the office. If so, the person interested must become the relator. He is the real party in interest, and the remedy sought is for the enforcement of a private right. But where it is sought to enforce a public right, the people become the real party, and the relator is only required to show that he is interested as a citizen in having the laws executed and enforced. *Pike County* v. *State,* 11 Ill. 202.

The remedy here sought is for the enforcement of a public right. A citizen and taxpayer of the District of Columbia applied to the attorney general of the United States and to the United States district attorney to bring this action. They refused. He presented his petition to a justice of the supreme court of the District, praying an allowance of the writ. The petition was supported by affidavits and other evidence establishing probable cause sufficiently to warrant the court in issuing the writ.

The term, "interested person," has received general judicial interpretation by the highest courts of many of the States. In

*Crovatt* v. *Mason,* 101 Ga. 246, 258, 28 S. E. 891, the court, considering a case arising under a statute providing that the writ of quo warranto may issue "at the suit of some person either claiming the office or interested therein," held that "the interest which one who is a citizen and taxpayer has in the due administration of public affairs will entitle him to main-tain the proceeding." Citing *Churchill* v. *Walker,* 68 Ga. 681; *Com. ex rel. Yard* v. *Meeser,* 44 Pa. 341; *State ex rel. Water-bury* v. *Martin,* 46 Conn. 479; *State ex rel. Atty. Gen.* v. *Vail,* 53 Mo. 97; *State ex rel. Richards* v. *Hammer,* 42 N. J. L. 435. In *State ex rel. Hann* v. *Bedell,* 67 N. J. L. 148, 50 Atl. 364, the court, upholding the right of a citizen and taxpayer to inter-pose by information, not in the name of the attorney general, as the statute required, but in the name of the State, and defining a person interested within the terms of the statute providing that "it shall and may be lawful to and for the attorney general, with the leave of the supreme court, to exhibit in the supreme court one or more information or informations in the nature of a quo warranto, at the relation of any person or persons desiring to sue or prosecute the same, who shall be mentioned in such information or informations to be the relator or relators," said: "As a taxpayer and inhabitant of the city, subject to its mu-nicipal government, he [the relator] is interested in the due selection of its officers, and is entitled to interpose by informa-tion in the nature of a quo warranto when such officers have been illegally selected."

In *State ex rel. White* v. *Barker,* 116 Iowa, 96, 57 L.R.A. 244, 93 Am. St. Rep. 222, 89 N. W. 204, involving the validity of the appointment of a board of waterworks trustees, the court was considering a statute very similar to ours, which provided, among other things, that "if the county attorney, on demand, neglects or refuses to commence the same, any citizen of the State having an interest in the question may apply to the court in which the action is to be commenced, or to the judge thereof, for leave to do so, and, upon obtaining such leave, may bring and prosecute the action to final judgment." The court, speak-ing through Mr. Justice Deemer, said: "It is admitted that the

county attorney refused to bring the action, and the only question for decision on this branch of the case is, Has the relator such an interest in the question as that he may apply to the court for leave to do so? We think he has such interest. A private citizen and taxpayer is undoubtedly interested in the duties required of the several public officials who are authorized to levy taxes. This is not a contest over an office, as were many of the cases cited in appellee's brief, but a matter of public interest in which relator has a special interest by reason of being a contributor to the funds."

In *State* v. *Mason,* 14 La. Ann. 510, and *Voisin* v. *Leche,* 23 La. Ann. 25, the court, considering a provision of the Louisiana Code taken from the statute of Anne, providing that "a mandate to prevent a usurpation of an office in a city or other corporation may be obtained by any person applying for it," held that the court would consider the words, "any person," to mean "any person having an interest." Under this interpretation the court held that a mere citizen and taxpayer was without standing to maintain the action; but in *State ex rel. Saunders* v. *Kohnke,* 109 La. 838, 33 So. 793, the court, while approving the interpretation placed upon the words, "any person," appearing in the statute, reversed the holding as to the degree of interest which the relator must show to enable him to exhibit the information. On this point the court said: "The other reason assigned by the court is that 'any person' means 'any person having an interest,' and that the statute itself being silent regarding the degree of interest required, the courts must supply the deficiency. This is true; but for more than a hundred years before the Mason suit was filed the courts of the country from which our Code borrowed this term of 'any person' had determined and fixed by a settled jurisprudence what this interest should be, and had settled that any inhabitant of a borough or town has a sufficient interest. Our conclusion must be that our Code, when it says 'any person,' means what it says; and that therefore the relator, as a resident and a taxpayer of the city, is competent to stand in judgment in the case."

In a number of States the language of the statute of Anne, "any person," has been incorporated in the statutes, and in each instance it has been held that the person seeking the writ must not be a mere volunteer, but must be a citizen or taxpayer, or both, of the municipality in which it is sought to oust the officer. *State ex rel. Waterbury* v. *Martin,* 46 Conn. 479; *State ex rel. Williams* v. *Samuelson,* 131 Wis. 499, 111 N. W. 712; *State ex rel. Hann* v. *Bedell,* 67 N. J. L. 148, 50 Atl. 364; *Com. ex rel. Yard* v. *Meeser,* 44 Pa. 341.

A careful review of the cases relied upon by respondent, and referred to in the opinion of the learned justice below, discloses a lack of analogy to the present case. In many of the cases, the statutes under consideration limit the right to present the information to the attorney general or district attorney, or to a person interested in the office.

In *State ex rel. Depue* v. *Matthews,* 44 W. Va. 372, 29 S. E. 994, a case strongly relied upon by respondent, the West Virginia statute provides that the writ may be applied for only by the attorney general or prosecuting attorney, either at his own instance, or on the relation of any person interested. In that case the petition was filed without the consent of the prosecuting attorney, and he refused in open court to give his consent. The court seems to intimate that, notwithstanding the limitation of the statute, a person interested in the office could, by leave of court, become a relator to enforce his private right. Indeed, this seems to be the rule in other States where the statutes expressly limit the right to bring the action to the proper prosecuting officer, either in his own name or on the relation of another.

In *State ex rel. Dowdall* v. *Dahl,* 69 Minn. 108, 71 N. W. 910, the court held that, under a statute requiring the consent of the attorney general as a condition precedent to the bringing of the action, it might not only be brought, by leave of court, and without the consent of the attorney general, by a person having an interest in the office to enforce a private right, but when, as in the case at bar, the office is appointive, and no one, by reason of that fact, can assert an interest in it, and the

attorney general refuses to act, the action may be brought by leave of court by a private person having no interest in the question distinct from the public. On that point the court said: "The attorney general has refused his consent to the institution of the proceeding, and, if his refusal is conclusive, that would end the matter. If this be so, there could not be, in the nature of things, any person who would be permitted to file an information as against an appointee to a public office, without the consent of the attorney general, the result being anomalous, in that, if the office were elective, a private party personally interested might proceed in the absence of consent, but, if it were appointive, the matter would be wholly within the control of the law officer of the State. No person could show that if an incumbent of any certain appointive office was found ineligible, and, for that reason, ousted from the place, he would be entitled to or would become a successor. We do not now question the correctness of the decision in *Barnum* v. *Gilman,* 27 Minn. 466, 38 Am. Rep. 304, 8 N. W. 375—and it is supported by any number of adjudicated cases—as the rule was applied to the facts there presented, but we are not ready to hold that it is applicable here, where the officer, if Dahl be an officer, is appointed, instead of elected, and where it would be impossible for another party to show that he had a personal interest in the question to be decided distinct from the public. In fact, we are of the opinion that this court has the right, and that under some circumstances it may, in the exercise of a sound judicial discretion, become its duty to permit an information in the nature of quo warranto to be filed by a private person (having no personal interest in the question distinct from the public) to test the right of an incumbent of a public office to hold the same, notwithstanding the attorney general has refused to give his consent to such filing." It will be observed that, according to the sound reasoning of the Minnesota court, even if the interpretation placed upon our statute by the lower court is correct, it is still within the discretion of the court to allow the writ, inasmuch as the office held by respondent is appointive, and no one exists who could legally lay claim to it.

In *Miller* v. *Palermo,* 12 Kan. 14, the decision was under a statute limiting the right of action to the attorney general or county attorney, or to "a person claiming an interest in the office." And in *State ex rel. Glenn* v. *Stein,* 13 Neb. 529, 14 N. W. 481, the Nebraska statute provided only for the action at the instance of "the prosecuting attorney of the proper county," or of any citizen of the State who "shall claim any office which is usurped, invaded, or unlawfully held and exercised by another."

In *Reynolds* v. *State,* 61 Ind. 392, and *State ex rel. Antrim* v. *Reardon,* 161 Ind. 249, 68 N. E. 169, the court was considering a statute providing as follows: "The information may be filed by the prosecuting attorney in the circuit court of the proper county, upon his own relation, whenever he shall deem it his duty to do so, or shall be directed by the court or other competent authority, or by any other person on his own relation, whenever he claims an interest in the office, franchise, or corporation which is the subject of the information." It was there held that, under the limitations of the statute, quo warranto could not be brought by a private person unless the relator could show "some right or interest in the office himself."

In *People ex rel. Peabody* v. *Atty. Gen.* 22 Barb. 114, and *People ex rel. Demarest* v. *Fairchild,* 67 N. Y. 334, the decisions were rendered under a statute of New York, providing that "the attorney general may maintain an action, upon his own information, or upon the complaint of a private person." It was there held, under the restrictions of the statute, that a citizen and taxpayer could not bring the action on behalf of the public. To the same effect are *Everding* v. *McGinn,* 23 Or. 15, 35 Pac. 178, and *Robinson* v. *Jones,* 14 Fla. 256, where the courts were considering statutes which are substantially the same as the statute of New York, and where the court, in each instance, adopted the construction placed upon the statute by the New York court.

Under the Missouri statute only "the attorney general of the state, or any circuit or prosecuting attorney of the county in which the action is commenced," may exhibit an information

"at the relation of any person or persons desiring to sue or prosecute the same." The court construed this statute as not being mandatory, and in the decisions relied upon by respondent (*State ex rel. Folk* v. *Talty,* 166 Mo. 529, 66 S. W. 361, and *State ex rel. Dorian* v. *Taylor,* 208 Mo. 442, 106 S. W. 1023, 13 Ann. Cas. 1058), refused to compel the prosecuting attorney to file the information at the request of a third person.

The same question was before the Michigan supreme court in *People ex rel. Yates* v. *Atty. Gen.* 41 Mich. 728, 3 N. W. 205, and *Coon* v. *Atty. Gen.* 42 Mich. 65, cited by respondent, where the action could be brought only by the attorney general in the supreme court. In the former case it was held that the court would not review the discretion of the attorney general. In the latter case the court refused to hold that it would not under any circumstances compel the attorney general to file an information. But under a statute subsequently enacted, providing that the information might be filed "by the prosecuting attorney of the proper county, on his own relation, or that of any citizen of the county, without leave of the court, or by any citizen of the county by special leave of the court" [How. Anno. Stat. 1882, § 8662], the court, in *Vrooman* v. *Michie,* 69 Mich. 42, 36 N. W. 749, held that this permitted an action by a private claimant of office, which "is a purely private litigation, but that a private citizen could not bring the action on behalf of the public." In *Lamoreaux* v. *Ellis,* 89 Mich. 146, 50 N. W. 812, the court, adhering to the rule that a private citizen could not bring the action on behalf of the public, since all public prosecutions should be brought by the attorney general or prosecuting attorney, held that, upon refusal of these officers to bring the action, they could be compelled to do so by mandamus at the suit of a citizen and taxpayer. This, of course, accomplishes indirectly what is accomplished directly under sec. 1540 of our Code. It indirectly gave a citizen and taxpayer the right to test the qualifications of an officer to hold office. The court was led to this conclusion upon the reasoning that any other course would leave it in the power of the attorney

general and prosecuting attorney to arbitrarily retain in office a person disqualified by law to hold it. On this point the court, in part, said: "If the attorney general and prosecuting attorney can refuse, for no good reason, to file an information of this kind upon the relation of one who claims that he was legally elected to an office, or of any elector, citizen, and taxpayer, who is interested in the due administration of public affairs, then it may happen that, if both of these officers belong to the same political party as the incumbent of the office, they would for that reason refuse to move in the matter, and keep in any county office for the full term a person not legally elected or legally qualified to hold it. * * * The public are vitally concerned in every election. What particular individual shall hold a particular office is not of so much consequence, but it is vital to the existence of a free government that there shall be a free, legal ballot, and an honest count; and that no one shall be permitted to hold an office not legally elected thereto, or qualified under the Constitution to hold it, if any elector and taxpayer shall object. Every honest citizen is interested and concerned in this matter, and has a legal right to be so. The courts ought not to consent to any holding which will put the power arbitrarily and without remedy or redress into the hands of any one, two, or three men to prevent a candidate for office from establishing his election to any office, or any citizen from inquiry in good faith into the rights of any person to hold an office. This would certainly be the result of the position taken by the attorney general."

In *People ex rel. Raster* v. *Healy,* 230 Ill. 280, 15 L.R.A. (N.S.) 603, 82 N. E. 599, the court, under a statute providing that quo warranto may be brought only by "the attorney general or state's attorney of the proper county, either of his own accord or at the instance of any individual relator," held that the State's attorney may be compelled to bring the action at the instance of an individual having a private right or grievance distinct from that of the public at large.

*State ex rel. Wasson* v. *Taylor,* 50 Ohio St. 120, 38 N. E. 24, involved the application of a private individual for leave

to file a petition in quo warranto under a statute of Ohio which authorized the attorney general or prosecuting attorney to bring the action of his own motion or by leave of court on the relation of another person, or by a person claiming the office. The court treated the motion as an application to the court to direct the attorney general to bring the action, which was refused on the authority of *Thompson* v. *Watson,* 48 Ohio St. 552, 31 N. E. 742.

In Pennsylvania, we find a liberal statute authorizing the issuance of a writ on the suggestion "of any person or persons desiring to prosecute the same." It was held in *Com.* v. *Burrell,* 7 Pa. 34, where the petition was by an individual for a writ against a judge of the court of common pleas, that the statute would not permit the action by a private citizen to redress a public wrong, but it was distinctly held that on the usurpation of a municipal or corporate office, * * * no franchise or exclusive right of the Commonwealth is invaded; and the intervention of a private prosecutor was extended to it, but not as a remedy for a public wrong. Other decisions of the same court (*Com. ex rel. Butterfield* v. *McCarter,* 98 Pa. 607, referred to in brief of respondent) held "that no mere private person, unless he had a private grievance to redress, could be heard on a writ of quo warranto." But in *Com. ex rel. Yard* v. *Meeser,* 44 Pa. 341, the writ was granted upon the petition of a private citizen to test the right of a member of the common council of a city to a seat in that body. Hence, it appears that, in that State, as in this District, the writ will be granted to a private citizen not interested in the office when the application, in the judgment of the court, is sufficient in law.

We have reviewed at great length the authorities relied upon by counsel for respondent. In these cases, of course, the particular statute in each jurisdiction must control; and where the statute in express terms, or by necessary implication, provides that the information shall be made only by the proper prosecuting officer, a mere citizen or taxpayer is without standing (except in Minnesota, where the court granted it in exercise of its inherent power); but in many instances, it will be ob-

served the statute restricts the right to bring the action to a person who can show an interest in the office superior to the officer against whom the writ is directed. In that instance, it becomes a private action for the enforcement of a private right, and not an action on behalf of the public. In other cases cited, it was sought to control the discretion of the prosecuting officer, and it was held that the discretion as to bringing the action of quo warranto reposed in him by statute could not be controlled. In other cases, a rule contrary to the latter was announced; but in none of the cases cited does the statute provide for the bringing of the action by a person interested merely, nor does it make any provision for bringing the action upon the refusal of the proper prosecuting officer to act when requested.

The learned justice below was led into this line of decision by interpreting the words, "person interested," in sec. 1540 to mean a person interested personally in the office. In no case called to our attention has the expression, "person interested," been interpreted to mean a person interested in the office, except possibly in *State ex rel. Depue* v. *Matthews,* supra, where the court intimated such a holding in a discussion not essential to the decision of the case. In each instance, where it has been held that a relator must be a citizen personally interested in the office, the decision was prompted by the express terms of the statute. Applying the same sound rule of statutory control of judicial decision, we must hold that "person interested" is broad enough to admit of any citizen and taxpayer of the District of Columbia, by leave of court, exhibiting an information in quo warranto to test the right of an officer to hold a public office. Indeed to hold otherwise would require us judicially to read into the statute something not reasonably deducible from the language employed by Congress in its enactment.

It is proper to inquire into the purpose of Congress in the enactment of this statute. Unquestionably it was to provide for a judicial determination of the right of a person to hold an office in the District of Columbia. In *George M. West Co.* v. *Lea Bros.* 174 U. S. 590, 43 L. ed. 1098, 19 Sup. Ct. Rep. 836, Chief Justice White, discussing the construction of statutes

where the text is ambiguous, stated that "then the cardinal rule requiring that we look beneath the text for the purpose of ascertaining and enforcing the intent of the lawmakers would govern." Or, as stated in *District of Columbia* v. *Brooke,* 214 U. S. 138, 53 L. ed. 941, 29 Sup. Ct. Rep. 560: "Not only the purpose of the law must be considered, but the means of its administration." Congress was fully cognizant that the courts generally have held the words, "a person interested" or "interested person," used in similar statutes, to embrace a citizen and taxpayer. Congress, it must be assumed, realized that, unless the words should be so interpreted, the statute would be meaningless; for, since all officers are appointed in this District, no one other than a citizen or taxpayer could be "a person interested" within the contemplation of the statute.

The attorney general and the district attorney each receives his appointment from the same source from which the principal officers of the District receive theirs. There is not such independence of action as where officers receive their commissions directly from the people by public election. Confronted by the presumption which attaches to every appointment to office, that the qualifications of the officer have been fully inquired into by the Executive before the nomination is sent to the Senate or the appointment finally made, Congress appreciated the delicate situation in which these officers are placed, and assumed that naturally they would hesitate to challenge the exercise of the discretion thus imposed in the President. There was reason, therefore, for Congress to enact a statute out of the ordinary and specially adapted to meet local conditions. All officers in the District of Columbia are appointed; none are elected as in the States. As was so clearly pointed out by the Minnesota court in the case of *State ex rel. Dowdall* v. *Dahl,* 69 Minn. 108, 71 N. W. 910, we have here the anomaly that there cannot be found a person qualified to assert such an interest in any office as would authorize him to become relator for the enforcement of his private right thereto. The commissioners are the chief administrative officers of the District; and Congress, in its wisdom, saw fit, for the better government of the

District, to place this limitation as to residence in the statute. It therefore becomes important that persons appointed to this office shall meet fully the prescribed qualifications. Nor is it proper for the courts to treat with indifference a provision of law which so vitally concerns the rights of every citizen.

Inasmuch as no one could show such an interest in an appointive office as would permit him to bring the action to enforce a private right, the contention of respondent would not only render sec. 1540 of the Code a nullity, when applied to public offices, but would repose in the executive officers of the government the power to set at naught the will of Congress, and appoint to and retain in office a person disqualified by law. Such power, as was so clearly pointed out by the Michigan court in *Lamoreaux* v. *Ellis,* 89 Mich. 146, 50 N. W. 812, should never, except in the case of an express constitutional command, be upheld by the courts. We think it was to meet the possible exigency of the exercise of mistaken authority that Congress placed it within the power of a citizen and taxpayer of this District to challenge the right of an officer to hold unlawfully an office therein. The *personnel* of the commissioners is a matter of the greatest concern to every citizen and taxpayer of the District of Columbia. We conceive it, therefore, to be the duty of the courts, if possible, to so construe the statute as to make it effective to afford the protection manifestly intended by Congress in its enactment.

This brings us to the second and less difficult question involved in this appeal. Is this action directed to the control of the discretion of the President of the United States? By the long line of decisions cited by the learned justice below, it is settled law that where an executive officer of the government is vested with discretionary power in the execution of a law, the exercise of that discretion cannot be controlled by judicial process. It is only where such an officer is charged by law with the performance of a mere ministerial act, devoid of discretion, that the courts will intervene to command its performance or restrain its violation.

But relator is not seeking either to review the action of the

President in making this appointment or to control his discretion. The purpose of the writ is not to compel the President to appoint a certain citizen nor to define a class of citizens from which a selection shall be made. It is to inquire into an alleged mistaken conception of the law by which it is claimed that a disqualified person has been installed into a public office. It may be that a trial upon the merits will disclose that no mistake was made, but that is a question of fact proper for judicial inquiry. Such a judicial inquiry is always permissible, regardless of the source from which the officer derives his commission. "We have no officers in this government, from the President down to the most subordinate agent, who does not hold office under the law, with prescribed duties and limited authority. And while some of these, as the President, the legislature, and the judiciary, exercise powers in some sense left to the more general definitions necessarily incident to fundamental law found in the Constitution, the larger portion of them are the creation of statutory law, with duties and powers prescribed and limited by that law." *The Floyd Acceptances* (*Pierce* v. *United States*), 7 Wall. 666, 676, 19 L. ed. 169, 173.

This action is not directed against the President. He is not a party to it, as would be essential were it sought to control his action. Neither is it an action to review the inquiry made by the President and the Senate into the qualifications of respondent. The case has passed beyond the point where it concerns either the President or the Senate. The manner of respondent's induction into the office of civil commissioner is only an incident in this suit. The real question here is whether he is lawfully entitled to hold the office, irrespective of the care exercised by the President and Senate in selecting him.

The President has no inherent power to appoint to office. His power as to certain officers is conferred by the Constitution, and, under the same provision (art II. sec. 2) in the absence of congressional direction as to the appointment of a Federal officer, he would undoubtedly have the power to make the appointment. But Congress may vest the power either in itself or the executive or the judicial branches of the govern-

ment. It is a political power, in this instance, conferred upon the Chief Executive. "The power of nominating to the Senate, and the power of appointing the person nominated, are political powers, to be exercised by the President, according to his own discretion." *Marbury* v. *Madison,* 1 Cranch, 137, 167, 2 L. ed. 60, 70. It is clear that there can be no review of the exercise of this power so long as it is exercised within the limitations of the law. But it is alleged it was not so exercised in making this appointment. In this instance, the executive power to appoint commissioners of the District of Columbia was conferred by the act of 1878; and, the power being delegated by the statute, it must be performed strictly in accordance with its provisions. The statute does not impose upon the President and Senate the duty of determining, from evidence taken, the qualifications of persons to hold the office of Commissioner. They may do so or not, as they choose. But it does emphatically prohibit a nonresident from holding the office. The question presented is neither political nor executive; it is legal and judicial. Hence, there is no judicial invasion of executive discretion.

But it is urged that to extend this power to a citizen is equivalent to placing a limitation upon the power of the President to remove an officer appointed by him. A commissioner of the District of Columbia is appointed for a term of three years, and the fixed tenure of office makes the office permanent. It is undoubtedly within the power of the President to remove a commissioner of the District from office (*Parsons* v. *United States,* 167 U. S. 324, 42 L. ed. 185, 17 Sup. Ct. Rep. 880; *Shurtleff* v. *United States,* 189 U. S. 311, 47 L. ed. 828, 23 Sup. Ct. Rep. 535), as it is within the power of the State to remove an officer elected to office. It hardly will be contended that it follows by analogy that, because the President has the power to remove an officer, the grant of that authority carries with it, by implication, the power to appoint to an office a person disqualified by law from holding it. The absurd conclusion sufficiently answers the proposition.

The judgment is reversed, with costs, and the cause is re-

manded for further proceedings not inconsistent with this opinion.                                          *Reversed* and *remanded.*

Mr. Chief Justice SHEPARD dissenting:

I am obliged to dissent from the judgment of the court in this case.

I have not the time, nor do I consider it important, to review the statutes and decisions of the several States relating to the general subject of quo warranto proceedings. The provisions of our Code (secs. 1538–1541 [31 Stat. at. L. 1419, 1420, chap. 854]) speak for themselves.

Those sections are copied in the opinion of the court, and will be here stated in substance only. Section 1538 authorizes the writ to issue against a person who unlawfully exercises a franchise or public office, or an office in any domestic corporation; and against persons exercising corporate rights or franchises not authorized by the laws of the District. Section 1539 authorizes the attorney general or the district attorney to institute the proceeding on his own motion, or on the relation of a "third person." Plainly this third person, upon whose information the law officers may act, is not required to have any special interest in the matter of the inquiry. Whether they shall institute the proceeding on their own motion or upon the relation of the third person is a matter entirely within the discretion of the law officers; except that in the latter case leave of the court must also be obtained and security given for costs.

If the law officers refuse their consent the "third person" cannot institute the proceeding. Section 1540 provides, however, that, if the officers refuse to act upon the request of a "person interested," "such person" may apply to the court for leave, etc. In my opinion the intent is here plainly expressed to limit the right to institute the proceeding, without the consent of the law officers, to an "interested person;" that is to say, to such third person only who may have and show a special interest in the matter of the inquiry.

The function of the legislature is to enact laws; that of the ju-

diciary to interpret them where they need interpretation. The intention of Congress seems to me too plainly expressed to leave room for interpretation. Hence there is no occasion to examine the statutes of other jurisdictions relating to quo . warranto proceedings, the language of which Congress did not adopt, of the decisions interpreting them, to ascertain the intention of Congress.

Under the peculiar municipal organization of the District of Columbia, the government is in Congress, the commissioners being merely its agents. They are invested with no general legislative powers; they do not levy taxes or fix the rate thereof. It is true that good government depends, in a measure, upon the honesty and efficiency of these agents of Congress, and the residents of the District are all interested, as are all residents of municipalities in general (though not to the same extent) in good government.

This is a general public interest concerning taxpayers, as such, no more than other residents.

Taxpayers, it is true, are sometimes permitted to enjoin the making of contracts or the fixing of burdens upon property; but in such cases it is apparent that they have a special property interest to assert and protect. There is no such question involved here.

Relating to the question, who shall exercise the office of commissioner of the District, the interest of the taxpayer is in common with all other residents.

In other words, it is a public interest the conservation of which is entirely under the control of the attorney general or the district attorney.

Public policy in this regard is for the determination of Congress exclusively. I see nothing negativing these views in the case of *Union P. R. Co.* v. *Hall,* 91 U. S. 343, 354; 23 L. ed. 428, 432.

In that case the relators were shippers of freight over the railway, and had, therefore, an interest peculiar to themselves and others similarly situated. Moreover, it was a proceeding for a writ of mandamus the rules governing which were not

governed by statute, and are different from those governing quo warranto. It has become in modern practice substantially nothing more than an action at law; the consent of the attorney general no longer being an essential. *Dancy* v. *Clark,* 24 App. D. C. 487, 497, and cases there cited; *Bundy* v. *United States,* 25 App. D. C. 459, 462.

Section 1541, so far as it relates to public office, is practically inoperative under the laws now governing the selection of district officers. It may, possibly, govern a proceeding where an officer in a private corporation may be involved. In such case the relator is required to set forth specially the facts upon which he claims to be entitled to the office. I perceive no bearing that this section has upon this case.

I base my dissent upon the sole ground that the independent relator is not an interested person within the meaning of the statute, and is not, therefore, entitled to maintain this action without the approval of the attorney general or the district attorney, to whom the interests of the public are intrusted.