STATE ex rel. H. W. CHILDS, Attorney General, v. JOHN B. SUTTON.[1]

December 12, 1895.

Nos. 9692—(110).

**Constitution—Right of Members of the Legislature to Hold Office.**

Article 4, § 9, of the constitution of this state provides as follows: "No senator or representative shall, during the time for which he is elected, hold any office under the authority of the United States or the state of Minnesota, except that of postmaster * * *." *Held* that, under this constitutional provision, the disability of a member of the legislature to hold office does not cease until the expiration of the full period of time for which he was elected.

[1] Reported in 65 N. W. 262.

Quo warranto.    Judgment of ouster.

*H. W. Childs*, Attorney .General, and *George B. Edgerton*, for relator.

The purpose of the constitutional provision is to guard against trafficking in offices.   A further purpose is to remove from the incumbent of an office an inducement for causing a vacancy.   Ellis v. Lennon, 86 Mich. 468, 49 N. W. 308;   Waldo v. Wallace, 12 Ind. 569;   Shelby v. Alcorn, 36 Miss. 273;   Sublett v. Bedwell, 47 Miss. 266;   Smith v. Moore, 90 Ind. 294;   1 Story, Const. §§ 867–869.   Constitutional ineligibility cannot be cured at the polls.   People v. Clute, 50 N. Y. 451;   Sublett v. Bedwell, supra;   Saunders v. Haynes, 13 Cal. 145;   State v. Smith, 14 Wis. 497;   Com. v. Cluley, 56 Pa. St. 270.

*Davis, Kellogg & Severance*, for respondent.

The right of resignation is absolute.   United States v. Wright, 1 McLean, 509, Fed. Cas. No. 16,775;   People v. Porter, 6 Cal. 26;   Gates v. Delaware County, 12 Iowa, 405;   Bunting v. Willis, 27 Gratt. 144. Where a constitutional provision has been practically construed and such construction has been continuously acted on, the courts will not construe the provision otherwise, if it can be avoided.   Carson v. Smith, 5 Minn. 58 (78); City of Faribault v. Misener, 20 Minn. 347 (396); State v. Benedict, 15 Minn. 153 (198);   Ames v. Lake Superior & M. R. Co., 21 Minn. 241.   See, also, State v. Lee, 29 Minn. 455, 13 N. W. 913; Willis v. Mabon, 48 Minn. 140, 50 N. W. 1110;   Endlich, Interp. St. § 527;   Cooley, Const. Lim. 81, et seq.   The construction of the attorney general's office, of the supreme court, and of the executive has been uniform and is in favor of respondent.   Matter of Commissioners, Opinions Attys. Gen. 146;   Matter of Page, Id. 277;   Matter of Gilman, Id. 406;   Matter of Jones, May 2, 1895 (unpublished opinion, Atty. Gen.);   Barnum v. Gilman, 27 Minn. 466, 8 N. W. 375.

BUCK, J.   At the general state election held November 6, 1894, the respondent, John B. Sutton, was elected to the office of representative of the Twenty-Third legislative district 'for the term commencing on the first Monday of January, 1895, and ending on the first Monday of January, 1897.   Pursuant to such election, he duly qualified and entered upon the discharge of his duties as such member at the commencement

of the session for the year 1895, and in that capacity served until May 2 of that year, when he resigned his office as such member. The legislative session during which he served as a member terminated prior to his resignation. On May 4, 1895, Sutton was appointed to the public office of inspector of boilers for the Fourth congressional district in this state, which office is one of great public importance and responsibility, it having been created by an act of the legislature prior to Sutton's election as a member thereof. Upon his appointment to the office of inspector of boilers, Sutton qualified and entered upon the performance of the duties of the office, and as such officer he has continued to and now occupies and holds said office, claiming the right so to do by virtue of his appointment. This proceeding is by a writ of quo warranto to oust and exclude the respondent, Sutton, from further acting as such inspector of boilers, upon the ground that he is prohibited by the constitution from holding such office until the expiration of the time for which he was elected as representative.

The clause relied upon by the attorney general to sustain his contention is article 4, § 9, of the constitution, and reads as follows: "No senator or representative shall, during the time for which he is elected, hold any office under the authority of the United States, or the state of Minnesota, except that of postmaster; and no senator or representative shall hold an office under the state, which had been created, or the emoluments of which had been increased during the session of the legislature of which he was a member, until one year after the expiration of his term of office in the legislature."

In treating of constitutional provisions, we believe it is the general rule among courts to regard them as mandatory, and not to leave it to the will or pleasure of a legislature to obey or disregard them. Where the language of the constitution is plain, we are not permitted to indulge in speculation concerning its meaning, nor whether it is the embodiment of great wisdom. A constitution is intended to be framed in brief and precise language, and represents the will and wisdom of the constitutional convention, and that of the people who adopt it. It stands, not only as the will of the sovereign power, but as security for private rights, and as a barrier against legislative invasion. It has been well said that "the constitution, which underlies and sustains the social structure of the state, must be beyond being shaken or affected by unnecessary construction, or by

the refinements of legal reasoning." People v. Rathbone, 145 N. Y. 434, 40 N. E. 395.

The rule with reference to constitutional construction is also well stated by Johnson, J., in the case of Newell v. People, 7 N. Y. 9, 97, as follows: "If * * * the words embody a definite meaning, which involves no absurdity, and no contradiction between different parts of the same writing, then that meaning apparent upon the face of the instrument is the one which alone we are at liberty to say was intended to be conveyed. In such a case there is no room for construction. That which the words declare is the meaning of the instrument; and neither courts nor legislature have the right to add to or take away from that meaning. This is true of every instrument, but when we are speaking of the most solemn and deliberate of human writings,—those which ordain the fundamental law of states,—the rule rises to a very high degree of significance. It must be very plain—nay, absolutely certain—that the people did not intend what the language they have employed in its natural signification imports, before a court will feel itself at liberty to depart from the plain reading of a constitutional provision."

In the case at bar it is not necessary for us to speculate upon the intention of the framers of the constitution in adopting the provision in question. A bare reading of this provision suffices to enable us to ascertain and understand its meaning, and we need not search for light through the uncertainties of extraneous interpretation or construction. It is a part of the organic law of the state that no senator or representative shall, during the time for which he is elected, hold any office under the authority of the state of Minnesota. Is there any uncertainty or ambiguity about this language? Has it any of the characteristics which demand a construction to be placed upon it by the judiciary of this state, other than that which is transparent from the language itself?

The respondent, Sutton, became a representative of the legislature of the state of Minnesota on the first Monday in January, 1895, and the time for which he was elected continues until the first Monday in January, 1897. He was not merely prohibited from holding any office during the time which he might serve, but during the time for which he was elected. The difference is obvious, and the language too sweeping to be disregarded. The respondent could not nullify

the constitutional prohibitory clause, "during the time for which he is elected," by his resignation of the office of representative. The time for which he was elected was the entire constitutional term of two years, and, whether he resigned during that time or not, he was not permitted to hold any other office under the authority of this state during such entire term. Evidently, it was the intention of the framers of the constitution, by the language used, to prevent, so far as possible, trafficking in public offices, and, so far as appropriate language, with definite and well-understood meaning, is concerned, they did so. But this clause is absolute in its express terms that no member of the legislature, during the time for which he was elected, shall hold any other office under the authority of the state of Minnesota. Hence, whether a member holds an office either by trafficking for it, or by an appointment conferred upon him, without solicitation and without bargaining for it, he still comes within the constitutional prohibition. It is not merely a question of whether he obtained the office in an honorable manner, but the prohibition is so far-reaching as to prohibit its being held, no matter what the conditions are upon which it was obtained.

It is due to the respondent that we should say distinctly that there is nothing in the record whereby anything dishonorable in obtaining this office can be imputed to him, or to the one appointing him. Undoubtedly he is holding this office under an erroneous view of the meaning of the constitutional provision above referred to, but nevertheless against its express prohibition.

There are several other constitutional provisions bearing upon this question of holding office which we may, perhaps, examine with profit. A member of the legislature is forbidden to hold any office under the state, the emoluments of which had been increased during the session of the legislature of which he was a member, until one year after the expiration of his term of office in the legislature. There can be no serious question raised as to the right of a member of the legislature to resign his office; but, if he does so, it cannot enlarge his right to hold another office, in violation of this constitutional prohibition. The disability only ceases at the expiration of the full period of time for which he was elected.

This prohibition against holding other offices also applies to the judiciary. Const. art. 6, § 11, provides that "the justices of the supreme

court and the district courts shall hold no office under the United States, nor any other office under this state. And all votes for either of them for any elective office under this constitution, except a judicial office, given by the legislature or the people, during their continuance in office, shall be void." As the judges have no legislative power, the rule applied to them is different, but not less rigid. Even a vote cast for them by the people or the legislature, for any office except a judicial one, is absolutely void; and bartering by them for other official positions would be utterly useless. But this prohibition as to votes for them only applies during their continuance in office. When their terms cease, the disability no longer exists, and during their terms, having no legislative power, the temptation to traffic in official positions is wanting; and, when their terms expire, they stand upon equal footing with other citizens, so far as concerns their right to hold office.

We are not unmindful of the fact that there is a long line of opinions given by the attorneys general of this state which are not in harmony with the views herein expressed upon the main question here involved, but, however able those opinions may be considered, yet, when the act of the respondent in holding the office of inspector of boilers, under the circumstances, clearly contravenes an express power of the constitution, we feel it our imperative duty to so hold and determine; and, while there may have been others holding offices under similar circumstances, one or more violations of a constitutional provision, we need hardly say, is no justification for any further violation of that instrument. Perhaps there is some apparent excuse and justification for the respondent's appointment and holding this office, in view of the opinions to which we have referred, and in view of the language used by the court in the case of Barnum v. Gilman, 27 Minn. 466, 8 N. W. 375.

Great reliance is placed by the respondent's counsel upon this case to sustain his position, and there is language used which seems to justify the meaning which counsel claim for it; but in view of the fact that the syllabus in that case makes no reference to this constitutional question, but does expressly state another ground upon which the case was decided, and in view of the further fact that the language used in the opinion seems to place the decision substantially upon another ground, we must regard what was there said in reference to the constitutional provision here under consideration as obiter. There are other statements, however, in that opinion, which

we regard as sound law, viz.: "Ineligibility to hold an office, and ineligibility to an election to it, are not identical. One may be disqualified from holding an office at the time of his election thereto, and yet be eligible to an election to it; and if, before he is required to enter upon its duties, the disability is removed, he may also take and hold it."

To illustrate this position, suppose a member of the house of representatives of the last legislature should, at the general election in the month of November, 1896, be elected to the office of governor of this state, his eligibility to the latter office could not be successfully challenged, because the time for which he was elected a member of the legislature would expire before the commencement of his official term as governor. In such case it could not be said that he was holding another office during the time for which he was elected a member of the legislature. It is therefore the holding of another office, and not the election to it, which is prohibited during the time for which a member of the legislature was elected.

We are of the opinion that the respondent, in holding the office of inspector of boilers, as charged in the writ of quo warranto, comes within the prohibition of the constitution (article 4, § 9), and it is therefore adjudged that said respondent, John B. Sutton, is guilty of unlawfully holding and exercising the office of inspector of boilers for the Fourth congressional district in this state. And it is further ordered and adjudged that said John B. Sutton be ousted and excluded from said office of inspector of boilers, and that judgment be entered accordingly.