STATE OF MINNESOTA ex rel. AUGUSTUS S. DOWDALL v. JOHN F. DAHL.[1]

June 23, 1897.

Nos. 10,663—(241).

Quo Warranto—Filing Information without Consent of Attorney General.

This court has the right, and under some circumstances, in the exercise of a sound judicial discretion, it may become its duty, to allow an information in the nature of quo warranto to be filed by a private person, having no personal interest in the question distinct from the public, to test the right of an incumbent of a public office to hold the same, notwithstanding the attorney general has refused to give his consent thereto.

Same.

But the granting or withholding leave to file such information at the instance of a private person rests in the sound legal discretion of the court, and is not a matter of strict legal right, and when the attorney general has refused to consent the case should be exceptional, and one in which it clearly appears that the public interests· require it to justify the court in overruling his judgment.

Same—Right of Member of Legislature to Hold Position of Court Stenographer.

Without deciding whether a stenographer in the district court is holding an "office," within the meaning of article 4, § 9, of the constitution, and in view of the provisions of the statute (Sp. Laws 1891, c. 370), under which such stenographer is appointed by and for each of the judges of the district court in question, and his duties thereunder, in connection with the fact that the proposed relator has no personal interest in the question distinct from the public, it is *held* that, in the exercise of a sound judicial discretion, the petition herein, praying, upon the ground that the appointee is holding his position in violation of the constitutional provision above mentioned, that the. petitioner be granted leave to file an information for the purpose above indicated, should be denied.

Petition by Augustus S. Dowdall, a freeholder and resident of Hennepin county, for leave to file an information for a writ in the nature of quo warranto against John F. Dahl. Order to show cause discharged.

*C. J. Cahaley,* for relator.

[1] Reported in 71 N. W. 910.

*Keith, Evans, Thompson & Fairchild,* for respondent.

Even if a court stenographer is an officer, it does not necessarily follow that he is an officer within the meaning of Const. art. 4, § 9.

In Wisconsin the salary of a county judge may be lawfully reduced during his term of office, notwithstanding art. 4, § 26, of the Wisconsin constitution. State v. Kalb, 50 Wis. 178. In Nebraska the salary of a county commissioner may be increased during his term of office, notwithstanding c. 3, § 16 of the Nebraska constitution. Douglas v. Timme, 32 Neb. 272. In California the same person may exercise at the same time judicial and executive functions, notwithstanding art. 3 of the California constitution. People v. Provines, 34 Cal. 520. In Indiana the same person may hold two salaried offices, notwithstanding art. 2, § 9, of the Indiana constitution. State v. Kirk, 44 Ind. 401. In Indiana a justice of the peace is eligible to the office of city clerk, during the term for which he was elected, notwithstanding art. 7, § 16, of the constitution of that state. Mohan v. Jackson, 52 Ind. 599.

The president of the city council is not an officer within the meaning of Const. art. 13, § 2. State v. Kiichli, 53 Minn. 147.

If a court stenographer be an officer he is an officer of the court, much the same as an attorney, yet attorneys are not officers of the state, though they are officers of the court. Cohen v. Wright, 22 Cal. 293; Ex parte Yale, 24 Cal. 242. Existence or absence of emoluments, or of the requirement of an official oath, or the permanent or transient character of duties is not a certain test to determine whether a person is a public officer. Throop, Pub. Off. §§ 6, 8. See Chittenden v. Wurster, 152 N. Y. 345, upon the construction of art. 5, § 9, of the New York constitution concerning appointment in the civil service of the state, where upon the argument both sides admitted that this provision imposed no restriction upon the appointment of a private secretary.

Unless the statute of Anne is a part of the common law of this state, the relator has no standing in court. Prior to the enactment of that statute, in the year 1711, the writ of quo warranto and the information by which it was superseded were solely a prerogative remedy, never issued or prosecuted at the suit of a private person or for the enforcement of a personal right. Unless a case fall with-

in the terms of this statute the controversy was in fact, as well as in name, between the crown and the individual claiming the office or franchise, and no private person could participate in any way. 19 Am. & Eng. Enc. Law, 675; Rice v. National, 126 Mass. 300; 7 Lawson, Rights, R. & P. § 4042; Goddard v. Smithett, 3 Gray, 116; Frey v. Michie, 68 Mich. 323; Thompson, Corp. § 6774; Beach, Priv. Corp. § 43; 18 Am. & Eng. Enc. Law, 661; 2 Spelling, Ex. Rel. §§ 1773, 1843, 1842, 1885; Angell & A., Corp. §§ 733, 735, 736; State v. Baker, 38 Wis. 71; State v. Mayor, 49 N. J. L. 515; People v. Albany, 57 N. Y. 161.

The operation of the statute of Anne was by its terms limited to England and Wales. It was never operative in any of the American colonies, and never became part of the common law of this country. Com. v. Burrell, 7 Pa. St. 34; Com. v. Arrison, 15 S. & R. 129; Com. v. Lexington, 6 B. Mon. (Ky.) 397; State v. Stewart, 6 Houst. (Del.) 359. Information in the nature of quo warranto authorized by this statute was only against the public officers mentioned in its preamble, municipal officers only. Even if this statute were enforced in this state, it could not be applied to a person acting as court stenographer. See State v. Stewart, supra; Barnum v. Gilman, 27 Minn. 466; Taylor v. Sullivan, 45 Minn. 309; State v. Tracy, 48 Minn. 500; High, Ex. Leg. Rem. §§ 697, 700; Mecham, Pub. Off. § 490; State v. Taylor, 50 Oh. St. 120; State v. Davis, 57 N. J. L. 203; Andrews v. State, 69 Miss. 740; Mills v. State, 2 Wash. 566; Lamoreaux v. Ellis, 89 Mich. 142; State v. Hamilton, 29 Neb. 198; State v. Stein, 13 Neb. 529; People v. Grand, 13 Colo. 11; Vrooman v. Michie, 69 Mich. 42; Com. v. Cluley, 56 Pa. St. 270; 19 Am. & Eng. Enc. Law, 677; 5 Wait, Act. & Def. 265; 5 Wait, Pr. 620; Miller v. Town, 12 Kan. 14; Com. v. Farmers, 2 Grant Cas. 392; State v. Smith, 32 Ind. 213; People v. Ryder, 12 N. Y. 433; Doolittle v. Supervisors, 18 N. Y. 155; Roosevelt v. Draper, 23 N. Y. 318; Demarest v. Wickham, 63 N. Y. 320; Attorney General v. May, 99 Mich. 538; 7 Lawson, Rights, R. & P. § 4042; State v. Vail, 53 Mo. 97; Com. v. McCarter, 98 Pa. St. 607; State v. Town, 109 Ind. 73; Robinson v. Jones, 14 Fla. 256; State v. Bieler, 87 Ind. 320; State v. Long, 91 Ind. 351; Reynolds v. State, 61 Ind. 392; Harrison v. Greaves, 59 Miss. 453; Com. v. Burrell, supra.

COLLINS, J.

The short facts are that Dahl was elected a member of the legislature of this state at the general election held in November, 1896. He qualified, and acted during the session of that body. By virtue of the special act of legislature referred to in the brief of the applicant, to wit, Sp. Laws 1891, c. 370, Dahl was appointed, after the adjournment of the session of the legislature, on May 1, 1897, by Hon. Seagrave Smith, one of the judges of the district court of Hennepin county, as his official court stenographer, took the oath to discharge his duties, and has ever since been acting in such capacity. Dowdall, the petitioner, is a resident, freeholder, and taxpayer of the county of Hennepin. He does not claim to have any right to, or to be qualified to hold, the position which Dahl now holds, if he is required to vacate it. May 3, 1897, Dowdall filed with the attorney general of the state of Minnesota a petition requesting that officer to procure from the supreme court of this state an information in the nature of quo warranto for the purpose of testing the right by which said Dahl held and exercised the position of official stenographic court reporter. A copy of this petition is attached to the moving papers herein, and also a copy of the opinion and decision of the attorney general, in which he refused the request so made. Upon such refusal said Dowdall comes to this court, and asks in his petition that he may become a relator in an information to be filed whereby proceedings in the nature of quo warranto may be taken to test Dahl's right to hold the appointment and serve as court stenographer during the two-years term for which he was elected to the legislature.

Counsel for Dahl contend that the position of court stenographer is not an "office," within the meaning of article 4, § 9, of the state constitution, wherein it is provided that "no senator or representative shall, during the time for which he was elected, hold any office under the authority of the United States, or the state of Minnesota, except that of postmaster," a provision which has recently been construed. State v. Sutton, 63 Minn. 147, 65 N. W. 262. As our decision is put upon other grounds, we need not pass upon this contention, although we shall have occasion later on to refer to the act under which the appointment was made, and also to the duties devolving upon an appointee under that act.

The power conferred upon this court to permit the filing of informations in the nature of quo warranto is found in G. S. 1894, § 4823, and the proceeding here is not the action provided for in chapter 79, § 5963. In the absence of legislation or any controlling consideration to the contrary, this proceeding is governed, as respects procedure, by the common-law rule. State v. Sharp, 27 Minn. 38, 6 N. W. 408. It was also held in that case, where an attempt was made to have the court overrule the determination of the attorney general to proceed, that it was for him, as the representative of the people, to determine whether the public good required the commencement of such a proceeding. If, said the court, the attorney general deems it best to proceed, it would be a very extraordinary case, if any, in which his determination would be overruled. This language may be somewhat broad, and the converse of the statement may not be true, but it clearly shows the views of the court as to the weight which should be given to the determination of the attorney general when application is made to him for the use of his name in this form of procedure. In the case of Barnum v. Gilman, 27 Minn. 466, 8 N. W. 375,—it being an application for leave, upon the refusal of the attorney general to file an information for a quo warranto to inquire into and to determine the defendant's right to hold an elective office, —it was held that a quo warranto would not be issued without the consent of the attorney general upon the information of a private party, having no personal interest in the question distinct from the public, to test the right of an incumbent to hold a public office. In Taylor v. Sullivan, 45 Minn. 309, 47 N. W. 802, the correctness of this decision seems to have been conceded. And in State v. Tracy, 48 Minn. 497, 51 N. W. 613,—an information against a pretended municipal corporation for the usurpation of corporate franchises, and to oust it from the exercise of corporate privileges,—the rule stated in the Gilman case was recognized and applied.

So it would seem that if the rule referred to is applicable in all cases in the nature of quo warranto, and is not to be deviated from under any circumstances, the petitioner cannot be permitted to file an information. He has no personal interest in the question distinct from the public. He is simply a taxpayer in the county, is not a stenographer, has not and could not have any claim to the place

himself. The attorney general has refused his consent to the institution of the proceeding, and, if his refusal is conclusive, that would end the matter.

If this be so, there could not be, in the nature of things, any person who would be permitted to file an information as against an appointee to a public office, without the consent of the attorney general, the result being anomalous, in that, if the office were elective, a private party personally interested might proceed in the absence of consent, but, if it were appointive, the matter would be wholly within the control of the law officer of the state. No person could show that if an incumbent of any certain appointive office was found ineligible, and, for that reason, ousted from the place, he would be entitled to or would become a successor. We do not now question the correctness of the decision in Barnum v. Gilman—and it is supported by any number of adjudicated cases—as the rule was applied to the facts there presented, but we are not ready to hold that it is applicable here, where the officer, if Dahl be an officer, is appointed, instead of elected, and where it would be impossible for another party to show that he had a personal interest in the question to be decided distinct from the public. In fact, we are of the opinion that this court has the right, and that under some circumstances it may, in the exercise of a sound judicial discretion, become its duty, to permit an information in the nature of quo warranto to be filed by a private person (having no personal interest in the question distinct from the public) to test the right of an incumbent of a public office to hold the same, notwithstanding the attorney general has refused to give his consent to such filing.

But the granting or withholding of leave to file an information at the instance of a private person rests in the sound discretion of the court, and is not a matter of strict legal right. When the attorney general has refused to give his consent, the case should be exceptional, and one in which it clearly appears that the public interests require it, to justify the court in overruling his judgment.

The law under which Dahl received his appointment (Sp. Laws 1891, c. 370) places the appointment of a reporter, to serve at the pleasure of the judge making the appointment, in the hands of each of the judges of the district court for Hennepin county. His duties

are prescribed by the law.   Not only is he to take stenographic notes of all trials and proceedings had before the judge appointing, when directed so to do, but he is to act in the capacity of private secretary to the same judge.   A mere glance at the law, and a slight knowledge of the duties to be performed thereunder, will suggest the personal relations which must necessarily exist between the judge and the appointee, and to what extent the personal views of the former should be allowed to control when once he has made a selection, and has named his reporter.   While the appointee takes an oath, and in part is paid for his services out of the county treasury, he exercises no official authority.   He merely records the court proceedings, but his records are not conclusive.   They are subject to correction by the court itself.   The position is distinctly clerical.   Intimate personal relations of a confidential character and a close association must necessarily exist between the judge making an appointment and the person he appoints for a term dependent upon his pleasure; a person in whose ability and integrity he must have implicit confidence.

These facts, and the further fact that the petitioner asserts no invasion of his personal rights, (is simply attempting to oust Dahl because he conceives that the law will permit him so to do,) lead us to conclude that this is a case where, in the exercise of a sound judicial discretion, we ought not to grant the petitioner leave to file the information.

Order to show cause discharged.

BUCK, J. (dissenting).

I do not concur in the result declared in the majority opinion, although there are some things there said to which I yield my assent. But I am of the opinion that in this case the writ should issue.   I cannot but think that the public interests require that the question involved should be tried and determined, and that the wish or opinion of no one person or officer should stand in the way of its early adjudication by the highest tribunal in the state.   Technical objections which keep a person in office in violation of a constitutional provision are obnoxious to the people generally.

Taking the record as it now stands, and from what argumentative light has thus far been thrown upon the subject, it seems to me that

Mr. Dahl, a member of the Minnesota legislature, is now holding another office, which is prohibited by article 4, § 9, of the constitution. The continued violation of this constitutional provision for many years led to the decision in the case of State v. Sutton, 63 Minn. 147, 65 N. W. 262, and it was generally believed and expected that when that decision was filed such violations of the constitution would cease. But the practical effect of the majority opinion is to nullify the doctrine there laid down, and to deny to the people of this state the right to know by a judicial determination whether an officer whom they are taxed to pay is holding an office in direct violation of a constitutional prohibition. To my mind, there is no force in the reasoning of the majority opinion that because the office is clerical and confidential in its character between the judge making the appointment and the reporter, and that the petitioner asserts no invasion of his personal rights, therefore we ought, in the exercise of a sound judicial discretion, to refuse leave to file the information. The reporter is a sworn public officer. His acts are, or should be, public. He has no right to make any other than public records, and for the benefit of the public and parties by whom he is paid. I think that a citizen and taxpayer, even if he has no personal interest in the office, should be permitted to file the information.

CANTY, J. (dissenting).

I cannot concur in the opinion of the majority. It seems to me that there is altogether too much doubting and temporizing in this case. The position of court stenographer in the district court of Hennepin county is either a public office or it is not. If it is not, on what theory does the incumbent draw a salary of $1,500 a year out of the public funds in the county treasury? He is not an object of charity. If it is once held that the members of the legislature may find for themselves fat places, where they can draw large pensions out of the public treasury without being burdened with any official duties, they will, indeed, be in clover. There ought not to be any doubt that such stenographer is a public officer. Chapter 370, Sp. Laws 1891, provides:

"Section 1. Each of the judges of the district court of Hennepin county may appoint a phonographic reporter, who shall be well skilled in his profession and competent to discharge the duties re-

quired, and who shall be a sworn officer of said court, and shall hold his office during the pleasure of said judge so appointing him. The salary of said reporter shall be fifteen hundred dollars ($1,500) per annum, payable in like manner as the salary of other officers of said county are now paid.

"Sec. 2. It shall be the duty of said phonographic reporters, and each thereof, to take, or cause to be taken, full phonographic notes of all trials and proceedings in said court had before the judge so appointing him, whenever so directed; and each of said reporters shall act in the capacity of a private secretary to the judge so appointing him, whenever so directed by said judge, in taking notes of any findings, decisions or orders of said judge, so given or rendered in open court or dictated at chambers to said reporter, and each of said reporters shall, when requested by said judge so appointing him, without charge therefor, transcribe said notes, or any part thereof, for the use of said judge, or for such other purpose in furtherance of justice as said judge may order."

The statute 9 Anne, c. 20, was passed to prevent the king's officers from carrying the keys to the courts of justice around in their pockets, so far as the cases of persons usurping offices were concerned; and it was by that act provided that private persons might, with leave of the court, be relators in informations in the nature of quo warranto in certain enumerated cases. The practice has been extended so as to include all kinds of cases where, in the opinion of the court, the information should be filed.

"And the principle is now firmly established that the granting or withholding leave to file an information, at the instance of a private relator, to test the right to an office or franchise, rests in the sound discretion of the court to which the application is made, even though there is a substantial defect in the title by which the office or franchise is held." High, Ex. Leg. Rem. (3d Ed.) § 605, citing many American decisions.

The majority concede that whether or not the proceeding shall be instituted at the suit of a private relator is in the sound discretion of the court. But on what do they base their discretion in this case? On nothing but the fact that a member of the legislature wants to draw a salary of $1,500 a year in holding another office of a confidential character. The constitution does not except offices of a confidential character. Because the respondent has taken dictation from which to prepare some of the judge's decisions, we have no right to assume that he carries around in his bosom some great state

secrets, and that the state will suffer if he loses his job and his $1,500 a year.

Neither is the fact that the attorney general has refused to do his duty in proceeding to oust the respondent any reason that this court should refuse to do its duty. The court is not reviewing the attor ney general's discretion at all. It has an independent discretion of its own. It should determine for itself whether or not the informa tion should be filed. Of course, if, in the exercise of a sound judicial discretion, it was found to be doubtful whether or not the private relator should be allowed to proceed, then the refusal of the attor ney general to proceed himself might be a circumstance to resolve the doubt in favor of denying the application. But the case is not doubtful. There is absolutely nothing to justify the court in refus ing to entertain this proceeding. If, as is often the case, the oust ing of the respondent would require a new election at considerable public expense, delay, and inconvenience, the case would be very different. But, if the respondent is ousted, the power that appoint ed him can in five minutes write a new appointment on a half sheet of paper for some one else, and the wrong is redressed. It cannot be pretended that other competent men are not to be had. The sound judicial discretion which refuses to inquire into so plain a case of illegal holding of office must be based on something sub stantial.

"The court will also weigh the considerations of public con venience involved, and will compare them with the injury com plained of, in determining whether to grant or refuse the applica tion. * * * The fact that a successful prosecution of the pro ceedings, which are brought to test the title to a municipal office, may result in the suspension of all municipal government in a city for a long period of time may properly be taken into account in deciding upon the application." High, Ex. Leg. Rem. (3d Ed.) § 605.

It is only considerations such as these that constitute a sufficient ground for refusing to entertain the proceeding.

Again, where the failure to comply with the law or the constitu tion in the selection of the officer is caused by some blunder or over sight, the courts are inclined to accept less as an excuse for refusing to allow a private relator to proceed. But here we must assume that the attempt to override the constitution is deliberate, and with

a full understanding of the fact that Dahl was, when appointed, ineligible. The case of State v. Sutton, 63 Minn. 147, 65 N. W. 262, had already been decided.

In passing on a case where an application was made by a private relator for leave to file an information in the nature of quo warranto it was said in Rex v. Parry, 6 Adol. & El. 810, 822:

"The inferior officers ought, indeed, to conform with care to the provisions of the law. The willful departure from them this court will visit severely; and even negligence may not always escape animadversion."

But here we have the spectacle of a willful violation of the constitution; and, by an inscrutable discretion based on nothing but the sweet will of those who exercise the discretion, the violation will be upheld, and allowed to continue. If one clause of the constitution can be set at naught, why cannot every other clause of it be set at naught?

There are so-called republics where, with the sanction or connivance of the judiciary, the executive uses his discretion to set aside the constitution whenever he sees fit, and where the government is a close corporation, run exclusively for the benefit of the executive and his favorites. How much better are we, if we fail to vindicate so important a principle as the one involved in this case?