**BUTLER TACONITE et al., Appellants,**

**v.**

**Arthur C. ROEMER, Commissioner of the Department of Revenue, Respondent.**

**No. 48753.**

Supreme Court of Minnesota.

July 6, 1979.

Hanft, Fride, O'Brien & Harries, Edward T. Fride, and Paul J. Lokken, Duluth, for appellants.

Warren Spannaus, Atty. Gen. and Paul R. Kempainen, Spec. Asst. Atty. Gen., Dept. of Revenue, St. Paul, for respondent.

KELLY, Justice.

Plaintiffs, who are engaged in the business of mining and producing iron ore in Minnesota, brought suit against the Commissioner of the Department of Revenue to prevent collection of the occupation tax on mining and production of iron ore and other ores prior to May 1 of the calendar year following the year of mining or production. Plaintiffs and defendant moved for summary judgment. The matter was decided for the defendant. Plaintiffs appeal. We reverse.

In 1921 the Minnesota Legislature proposed a constitutional amendment to allow an occupation tax to be placed on the mining and production of iron and other ores. The amendment, which was adopted at the 1922 general election, stated that: " * * * said tax [was] to be due and payable * * * on May first of the calendar year next following the mining or producing thereof." L. 1921, c. 529.[1]

In the same legislative session a bill was passed which was designed to implement

[1]. In the 1974 restructuring of the Minnesota Constitution, the phrase "and payable" was dropped. This was not intended to change the interpretation of the section, however, only to make the Constitution more readable and stylistically correct. See, Minnesota Constitutional Study Commission, final report. The defendant concedes that the phrase "due and payable" is properly the subject of construction by this court.

the mining tax.[2] It stated that: " * * * said tax [was] to be due and payable * * on May 1 of the year next succeeding the calendar year covered by the report [of ore production] * * *."[3]

In 1977 the Legislature of Minnesota enacted the Omnibus Tax Bill. L. 1977, c. 423. The bill changed the method by which the tax on mining and production of ores would be collected. Under article IX of the Omnibus Tax Bill persons subject to the tax would file reports on yearly estimated production by March 15 of the year under consideration. Four equal payments of the estimated tax would be required on March 15, June 15, September 15, and December 15 of that year. L. 1977, c. 423, art. IX, § 1, subds. 2 and 3.

On appeal plaintiffs contend that article IX of the Omnibus Tax Bill is unconstitutional and that it impairs a contract existing between the people of the State of Minnesota and the plaintiffs, insofar as it requires collection of the occupation tax prior to May 1 of the calendar year following the year of mining or production. Because we agree with plaintiffs' contention that article IX of the Omnibus Tax Bill is unconstitutional, we need not reach the contract issue.

Defendant notes that the constitutional amendment was proposed by the legislature to confirm the constitutionality of the tax enabling statute which was enacted at approximately the same time. In 1921, the subcommittee of the House Committee on Taxes and Tax Laws sent a letter to the attorney general inquiring as to the constitutionality of proposed legislation which would tax the mining and production of ore. Although the attorney general assured the legislators that the tax was constitutional, both a constitutional amendment and a tax bill were eventually passed (Journal of the House, 1921, pp. 499–501). The constitu-

tional amendment and the tax enabling legislation were both considered by the Minnesota legislature at the same session and approximately the same time. See, Journal of the House, 1921, p. 502; Journal of the Senate, 1921, pp. 565, 566. In fact changes made to one were sometimes reflected in changes made to the other. See, e. g., Journal of the House, 1921, pp. 648, 650.

In *Lyons v. Spaeth*, 220 Minn. 563, 20 N.W.2d 481, 162 A.L.R. 1041 (1945), this court upheld an amended version of the occupation tax law which classified taxpayers within the occupation. In examining the constitutional section under scrutiny here, the court stated:

" * * * While there can be little doubt that the submission of § 1A to the people was due to a lack of assurance on the part of the Legislature as to its powers under art. 9, § 1, and that it was properly submitted solely to confirm the constitutionality of L. 1921, c. 223, nevertheless we look to the language of § 1A and to the surrounding circumstances to determine the people's intent." 220 Minn. 567, 20 N.W.2d 484, 162 A.L.R. 1048.

Relying on this language, defendant offers evidence that the people did not intend to rigidly set the date of tax payment: the date was not in issue at the election; the description of the amendment used on the ballots never mentioned the date the tax would be due (L. 1921, c. 529, § 3); and the attorney general's summary of the purpose and effect of the amendment did not indicate that one of its effects would be a limitation on the ability of the legislature to set collection dates. 220 Minn. 568, n. 5, 20 N.W.2d 484, n. 5, 162 A.L.R. 1048, n. 5.

The full text of the amendment was available to the public, however. Individual voters would have been made aware of the limitation on collection dates from the lan-

---

**2.** The occupation tax as amended is presently at M.S.A. 298.

**3.** In 1973 this language was amended to provide that the tax shall be due and payable " * * * on or before June 15 * * *." L. 1973, c. 631, § 1.

guage of the amendment itself. Although the date of collection of the tax may not have been an issue at the general election, we cannot ignore the presumed intention of the people of this state especially if it is expressed by clear language.

Plaintiffs argue that the constitutional language that states that the tax is due and payable May 1 of the year after production is clear in precluding the collection of the occupation tax prior to the date the tax is due. Defendant argues that the constitutional language is neither prohibitory in nature nor so clear as to be capable of but one interpretation. Further, defendant argues, "due" has a variety of meanings including "owing", "payable", and "justly owed", Black's Law Dictionary, (4th ed.) p. 589, and "payable" is also a word of "ambiguous import." 70 C.J.S. Payable. Defendant does not consider the meaning of the words "due" and "payable" used together, however.

■ The average layman would reasonably expect that a tax could not be collected before it is due and payable. "Where the language of the constitution is plain, we are not permitted to indulge in speculation concerning its meaning, nor whether it is the embodiment of great wisdom." *State ex rel. v. Sutton*, 63 Minn. 147, 149, 65 N.W. 262, 263 (1895). Moreover, defendant does not suggest a reasonable alternative to the meaning ascribed to the language by the plaintiffs and no section of a constitution should be considered superfluous. See, *State ex rel. Chase v. Babcock*, 175 Minn. 103, 220 N.W. 408 (1928).

■ We have often made use of the phrase "due and payable" in our opinions and though we have never specifically held that money may not be collected prior to its being due and payable, this is often implicit in the manner in which we have used the phrase. For example:

"* * * As between ordinary persons, interest on money runs from the time the money becomes due and payable until the payment is made. Where money has been paid and received under a mistake of fact, and no fraud or misconduct can be imputed to the party receiving it, money does not become due and payable, and is not considered in default until a demand for payment has been made." *General Mills, Inc. v. State*, 303 Minn. 66, 71, 226 N.W.2d 296, 299 (1975).

"* * * While [other courts] hold that the beneficiary has a vested right in the instalments which became due and payable in his lifetime and that such instalments, if unpaid, belong to his estate and may be recovered by the representative of the estate, they also hold that he has no vested right in instalments to accrue in the future, and that all rights as to such instalments terminate at his death." *Tierney v. Tierney & Co.* 176 Minn. 464, 466, 223 N.W. 773, 774 (1929).

The legislature has also used the phrase "due and payable" in statutes, and the language suggests that money may not be collected until it is due and payable.

"* * * No structures, standing timber, minerals, sand, gravel, peat, subsoil, or top-soil shall be removed from any tract of land until all the taxes assessed against such tract and due and payable shall have been fully paid and discharged * * *." Minn. St. 272.38.

"Any person who shall remove or attempt to remove any structure, timber, minerals, sand, gravel, peat, subsoil, or topsoil from any tract of land contrary to the provisions of this chapter after such taxes become due and payable and before the same have been fully paid and discharged shall be guilty of a gross misdemeanor." Minn. St. 272.40.

Statutes in effect at the time the constitutional language in question was proposed by the legislature also used "due and payable" in this manner:

"Such taxes [on telegraph and telephone companies] shall become due and payable on January 1 following the levy thereof, and, if not paid as herein provid-

ed, the state treasurer shall collect the same." Minn. St. 1913, § 2264.

"All [inheritance] taxes imposed by this act shall take effect at and upon the death of the person from whom the transfer is made and shall be due and payable at the expiration of one year from such death, except as otherwise provided in this act." Minn. St. 1913, § 2273.

Language used in legal form books is incorporated into many legal documents and is necessarily designed to be as free from ambiguity as possible. Such sources suggest that the phrase "due and payable" be used in situations where it is apparent that money may not be collected prior to its being due and payable.[4]

Moreover, legal forms prepared by the Uniform Conveyancing Blank Commission under statutory authority, Minn. St. 507.09, also use the phrase "due and payable" to indicate the time mortgage payments are due. See, Uniform Conveyancing Blank Form Nos. 41–43. It is difficult to contend that "due and payable" is so ambiguous that a mortgagee could reasonably demand payment from a mortgagor before the amount has become due and payable.

Defendant's argument that the phrase "due and payable" is ambiguous in the constitutional context under consideration is without merit. We do not hold that the phrase "due and payable" is always subject to one interpretation, only that as used in the Minnesota Constitution it precludes collection of the occupation tax prior to May 1 in the year following production.

" * * * The rule with reference to constitutional construction is also well stated by Johnson, J., in the case of *Newell v. People*, 7 N.Y. 9, 9F, as follows:

. 'If the words embody a definite meaning, which involves no absurdity, and no contradiction between different parts of the same writing, then the meaning apparent upon the face of the instrument is the one which alone we are at liberty to say was intended to be conveyed. In such a case there is no room for construction. That which the words declare is the meaning of the instrument, and neither courts nor legislature have the right to add to, or take away from, that meaning. This is true of every instrument, but when we are speaking of the most solemn and deliberate of human writings,—those which ordain the fundamental laws of states,—the rule rises to a very high degree of significance. It must be very plain—nay, absolutely certain—that the people did not intend what the language they have employed to its natural signification imports, before a court will feel itself at liberty to depart form the plain reading of a constitutional provision.' " *State ex rel. v. Sutton*, 63 Minn. 147, 150, 65 N.W. 262, 263 (1895).

Reversed and remanded.

TODD, J., took no part in the consideration or decision of this case.

---

4. "Institution may call for additional collateral if institution determines in its sole discretion that additional collateral is necessary for its protection. If maker fails to supply the additional collateral that institution calls for within ___ days from the date of request, this note shall, at the option of the institution, become immediately due and payable." 18 Am. Jur. Legal Forms 2d § 253: 1916, p. 535.

"The principal hereof shall be paid in ____ (____) installments, the first of which shall be in the sum of _____ Dollars ($_____) and shall be due and payable on _____, 19 __. The remaining installments shall each be in the sum of _____ Dollars ($_____) and shall be due and payable _____ thereable after." [Monthly, Quarterly, Semiannually] after." Modern Legal Forms, § 1409.5, p. 410, pocket part.