COMMONWEALTH of Pennsylvania ex rel. Gerald J. PAPPERT, Attorney General of Pennsylvania, Petitioner

v.

Jeffrey W. COY, Respondent.

Commonwealth Court of Pennsylvania.

Argued Nov. 1, 2004.

Decided Nov. 8, 2004.

Gregory R. Neuhauser, Harrisburg, for petitioner.

Bruce D. Foreman, Harrisburg, for respondent.

Michael P. Edminston and Reizdan B. Moore, Harrisburg, for intervenor, H.W. DeWeese.

BEFORE: COLINS, President Judge, SMITH–RIBNER, J., FLAHERTY, Senior Judge.

OPINION BY Judge SMITH–RIBNER.

On September 7, 2004, the Commonwealth of Pennsylvania ex rel. Gerald J. Pappert, Attorney General (Attorney General) filed a petition for review in the nature of a complaint in quo warranto and petition for injunctive relief (together, Petition) challenging the September 3, 2004 appointment by the Minority Leader of the House of Representatives, H. William DeWeese, of former Representative Jeffrey W. Coy to a seat on the newly created Pennsylvania Gaming Control Board (Gaming Control Board). The Attorney General at the same time filed an application for special and summary relief pursuant to Pa. R.A.P. 1532 (Application). On September 20, 2004, Respondent Coy filed answers with new matter to the Petition and Application, and he also filed preliminary objections.

## I

The Petition stated that Respondent Coy was elected to the House of Representatives from the 89th Legislative District at the general election in 2002 and that pursuant to Article II, Section 2 of the Pennsylvania Constitution his term of office commenced on December 1, 2002 and it expires on November 30, 2004.[1] Re-

---

1. Article II, Section 2 provides:

Members of the General Assembly shall

spondent Coy resigned as a Member of the House on September 2, 2004.

Section 1 of the Act of July 5, 2004, P.L. ——, No. 2004–71 (Act 71) added the Pennsylvania Race Horse Development and Gaming Act (Gaming Act), 4 Pa.C.S. §§ 1101–1904, to Title 4 of the Pennsylvania Consolidated Statutes. In Section 1201 of the Gaming Act, 4 Pa.C.S. § 1201, the Gaming Control Board was established. Section 1202(a), 4 Pa.C.S. § 1202(a), provides that its general powers include "general jurisdiction over all gaming activities or related activities as described in this part," including "jurisdiction over every aspect of the authorization and operation of slot machines." Under Section 1201(b), 42 Pa.C.S. § 1201(b), three members are appointed by the Governor and one member is appointed by each of the legislative caucus leaders. Under Section 1201(k), 42 Pa.C.S. § 1201(k), initial appointments were required to be made within sixty days of the effective date, or by September 3, 2004.

Article II, Section 6 of the Pennsylvania Constitution, headed "Disqualification to hold other office," provides:

No Senator or Representative shall, *during the time for which he was elected,* be appointed to any civil office under this Commonwealth to which a salary, fee or perquisite is attached. No member of Congress or other person holding any office (except attorney-at-law or in the national guard or in a reserve component of the armed forces of the United States) under the United States or this Commonwealth to which a salary, fee or perquisite is attached shall be a member

of either House during his continuance in office. (Emphasis added.)

The Attorney General alleged in the Petition that Respondent Coy was prohibited by Article II, Section 6 from being appointed to the Gaming Control Board "during the time for which he was elected," which was from December 1, 2002 until November 30, 2004, and that because the prohibition applied "during the time for which he was elected" rather than merely while he held office, it was not overcome by his resignation. Count One of the Petition sought a declaration that the appointment was null and void and an order removing Respondent Coy as a member of the Gaming Control Board. Count Two asserted that the appointment violated the Constitution and sought a preliminary and permanent injunction prohibiting Respondent Coy from serving on the Gaming Control Board. The Attorney General asserted in the Application that immediate relief was necessary to avoid continuing injury and to assure that the government functions within the bounds of the Constitution and that the public interest would be protected rather than harmed by the injunctive relief sought.

Respondent Coy filed answers and also preliminary objections. He first interposed a demurrer to the Petition and request for injunctive relief, asserting that the prohibition in Article II, Section 6 did not apply to former members of the House. He also asserted lack of ripeness, arguing that the appointment was not final because the required State Police background check had not been completed and that the Gaming Control Board did not yet exist. Respondent Coy stated that the Application for special and summary relief

---

be chosen at the general election every second year. Their term of service shall begin on the first day of December next after their election. Whenever a vacancy shall occur in either House, the presiding officer there-

of shall issue a writ of election to fill such vacancy for the remainder of the term.
Article II, Section 3 provides: "Senators shall be elected for the term of four years and Representatives for the term of two years."

contained allegations of fact not of record, and were not verified as required by Pa. R.C.P. Nos. 206.3 and 1024(a), made applicable by Pa. R.A.P. 1517; that the averments regarding continuing injury and harm to the public interest were not sufficiently specific; and, again, that the Article II, Section 6 prohibition applied only to incumbent members and that the matter was not ripe for determination.

█ Senior Judge Flaherty sustained the preliminary objections grounded in a ripeness challenge. The Attorney General appealed, and on October 15, 2004 the Supreme Court determined that the ripeness doctrine is not an impediment to further proceedings in this matter and remanded the case to this Court. Respondent Coy, Intervenor Representative DeWeese and amicus Senate Minority Leader Senator Robert J. Mellow have filed briefs in support of the preliminary objections. The Attorney General and amicus President pro tempore of the Senate Senator Robert C. Jubelirer have filed briefs in support of the Application and briefs in opposition to the preliminary objections.[2]

### II

The heart of this case is the contention of the Attorney General in the Petition and the Application that the first sentence of Article II, Section 6 applies in this case and invalidates the appointment of Respondent Coy, and the contention of Re-spondent Coy, Intervenor Representative DeWeese and Senator Mellow in their objections and supporting briefs that it does not. As for the text of Article II, Section 6, the Attorney General and Senator Jubelirer state that there is no dispute that Respondent Coy was a representative and that the position of member of the Gaming Control Board is a "civil office under this Commonwealth to which a salary ... is attached." Thus the sole issue is whether the language "during the time for which he was elected" and the fact of Respondent Coy's resignation removes him from the operation of Article II, Section 6.

█ Pursuant to Pa. R.A.P. 1532(a) the Court may order special relief, including a preliminary or special injunction. The test for obtaining a preliminary injunction under this rule is the same as that for the grant of a preliminary injunction under the Rules of Civil Procedure. *Shenango Valley Osteopathic Hosp. v. Department of Health*, 499 Pa. 39, 451 A.2d 434 (1982). Pursuant to Pa. R.A.P. 1532(b), the Court on application "may enter judgment if the right of the applicant thereto is clear" at any time after the filing of a petition for review. The Court may grant summary relief pursuant to Rule 1532(b) where the moving party establishes that the case is clear and free from doubt, that there exist no genuine issues of material fact to be tried and that the moving party is entitled to judgment as a matter of law. *Department of the Auditor General v.*

**2.** Regarding the preliminary objections asserting lack of verification and vagueness, Respondent Coy argues that Paragraphs 5 and 6 of the Application claiming continuing injury and that the public interest will be protected by granting the relief sought make averments of fact not of record that have never been verified. Similarly, he asserts that these paragraphs are too vague to permit a responsive answer. The Attorney General, in his later brief, points out that violations of law constitute irreparable harm and that no further proof of harm is needed, citing *Pennsylvania Public Utility Commission v. Israel*, 356 Pa. 400, 52 A.2d 317 (1947) (holding that violation of statute is harm per se). The Court agrees that the allegations of continuing injury derived from a largely agreed upon set of operative facts do not constitute unverified factual allegations or allegations too vague to admit of reasonable response.

*State Employees' Retirement System,* 860 A.2d 206 (Pa.Cmwlth.2004) (*Auditor General II*).

 As Senator Jubelirer and others note, the "touchstone" of constitutional interpretation is "the language of the Constitution itself." *Firing v. Kephart,* 466 Pa. 560, 565, 353 A.2d 833, 835–836 (1976). A provision of the Constitution is to be interpreted insofar as possible in terms of its spirit and intention and in its popular sense as understood by the people who adopted it. *Id.* at 565, 353 A.2d at 835. In *Commonwealth v. Edmunds,* 526 Pa. 374, 586 A.2d 887 (1991), the Supreme Court provided a four-pronged analysis when construing a provision of the Constitution. It is important that litigants brief and analyze at least four factors: "1) text of the Pennsylvania Constitution; 2) history of the provision, including Pennsylvania case-law; 3) related case-law from other states; 4) policy considerations, including unique issues of state and local concern, and applicability within modern Pennsylvania jurisprudence." *Id.* at 390, 586 A.2d at 895. *See also Lawless v. Jubelirer,* 789 A.2d 820 (Pa.Cmwlth.2002) (Smith–Ribner, J., concurring and dissenting).

The Attorney General and Senator Jubelirer assert that the Article II, Section 6 phrase "the time for which he was elected" means the two-year period that is the term established by Article II, Section 3. *See* n1, above. The Attorney General observes that although Respondent Coy had the capacity to resign and did so, it is not tenable to think of his constituents as having "elected" him to serve until September 2, 2004; rather, they elected him to serve a full two-year term, which commenced on December 1, 2002 and ends on November 30, 2004. The Attorney General argues that the interpretation of Respondent Coy and Intervenor Representative DeWeese and Senator Mellow that the phrase "the time for which he was elected" means only the time for which an elected member continues in office is refuted in part by the second sentence of Article II, Section 6. That sentence expressly states that no member of Congress or other person holding an office under the United States or the Commonwealth to which a salary, fee or perquisite is attached shall be a member of either House "during his continuance in office," thus showing that the Framers knew how to express that meaning when they so chose. The Attorney General maintains that the Article II, Section 6 provision at issue is concerned with the period "for which [a member] was *elected*" (emphasis added), regardless of whether it is described as a "term" or a "time." [3]

Although there are no judicial decisions interpreting the first sentence of Article II, Section 6, opinions of the Attorney General have addressed this precise point consistently over an extended period. In a 1924 opinion on whether a legislator could be appointed as a judge of the court of common pleas it was stated:

> The time of such ineligibility is definitely fixed by the constitutional provision. It is the time for which he shall be elected and that time in the case of Senators is four years, and in the case of Representatives two years.

---

**3.** Senator Jubelirer and the Attorney General quote Judge Woodside on the purpose of Article II, Section 6: "The purpose of the provision is to prevent the governor and other state officials from rewarding legislators for their votes by appointment to lucrative offices, and, of course, to prevent a legislator from offering his vote in exchange for some appointment." Robert E. Woodside, Pennsylvania Constitutional Law 260 (1985). As the Attorney General notes, this salutary purpose would be largely frustrated if legislators could avoid the prohibition by the simple expedient of resigning before their appointment.

Resignation of a Senator or Representative can make no difference, for neither can by any act of his own nullify the plain wording and intent of the Constitution and change and shorten the time fixed by that instrument in which he shall be ineligible for appointment to civil office.

*Official Opinions of the Attorney General of Pennsylvania, 1923 and 1924,* 173, 177 (February 29, 1924). Also in a 1953 opinion regarding possible appointment of a legislator to the Turnpike Commission, the then Attorney General concluded:

(a) A member of the present General Assembly may not be appointed as a member of the Pennsylvania Turnpike Commission until his term of office as a senator or representative shall have expired.

(b) The resignation of a member of the General Assembly will not make him eligible for appointment to a civil office under the Commonwealth during the time for which he has been elected.

*Official Opinions of the Attorney General of Pennsylvania, 1953 and 1954,* Op. Atty. Gen. (No. 641) (August 24, 1953), 86 Pa. D. & C. 71 (Pa.Dept.Just.1953). These opinions represent the historical practice of the Executive Department.

The Attorney General of the United States opined in 1882 that under the plain language of Article I, Section 6, clause 2 of the United States Constitution,[4] a senator who resigned before the end of his elected term could not be appointed to a newly created office of tariff commissioner. *Appointment to Civil Office,* 17 U.S. Op. Atty. Gen. 365, 365–366 (1882). Other

state cases have interpreted similar provisions in a similar manner. The Michigan Supreme Court in *Richardson v. Hare,* 381 Mich. 304, 160 N.W.2d 883 (1968), interpreted Article IV, Section 9 of the Michigan Constitution prohibiting any person elected to the legislature from any civil appointment "during the term for which he is elected." The court concluded that the prohibition applied not merely to the period when a senator served as senator but during the term for which he was elected and that resignation would not counteract the prohibition. *See also State ex rel. Childs, Attorney General v. Sutton,* 63 Minn. 147, 150–151, 65 N.W. 262, 263 (1895) ("[Sutton] could not nullify the constitutional prohibitory clause, 'during the time for which he is elected,' by his resignation of the office of representative. The time for which he was elected was the entire constitutional term of two years, and, whether he resigned during that time or not, he was not permitted to hold any other office. . . .")

In support of their demurrers, Respondent Coy, Intervenor Representative DeWeese and Senator Mellow all contend that the language of Article II, Section 6 applies only to a sitting Senator or Representative, not a former Senator or Representative who has resigned. They note that the heading is "Disqualification to hold *other office*" (emphasis added), which they interpret as a prohibition against dual office holding by legislators. Intervenor Representative DeWeese argues that the phrase "during his continuance in office" in the second sentence of Article II, Section 6 merely complements the proscription that

---

4. Article I, Section 6, clause 2 provides:
 No Senator or Representative shall, during the Time for which he was elected, be appointed to any civil Office under the Authority of the United States, which shall have been created, or the Emoluments

whereof shall have been increased during such time and no Person holding any Office under the United States, shall be a Member of either House during his Continuance in Office.

currently serving state legislators may not hold certain appointive offices by providing that certain other office holders may not serve as state legislators.

Respondent Coy notes that Article II, Section 2, relating to election of members and vacancies, refers to their "term of service" and provides that when a vacancy occurs the presiding officer shall issue a writ of election to fill such vacancy "for the remainder of the term." Section 3 specifies the duration of the "term" for senators and for representatives, and Section 4 provides that the General Assembly shall be a continuing body "during the term for which its Representatives are elected." Further, Article II, Section 8 provides in relevant part: "No member of either House shall *during the term for which he may have been elected,* receive any increase of salary, or mileage, under any law passed during such term. (Emphasis added.)" Respondent Coy contends that these provisions, particularly Section 8, demonstrate that the Framers did not intend "time" and "term" to be used interchangeably.

Respondent Coy asserts that the Delaware Supreme Court interpreted a similar provision of the Delaware Constitution as applying to incumbent legislators. Article II, Section 14 of the Delaware Constitution provides in part: "No Senator or Representative shall, during the time for which he or she shall have been elected, be appointed to any civil office under this State which shall have been created, or the emoluments of which shall have been increased during such time." Respondent Coy notes that in *Opinion of the Justices,* 245 A.2d 172 (Del.1968), the court held that this

provision meant simply that acceptance of a second office acts as an automatic resignation of a first office.[5] He cites *Commonwealth ex rel. Kelley v. Keiser,* 340 Pa. 59, 16 A.2d 307 (1940), to the effect that under the state Constitution powers not expressly withheld from the legislature inhere in it, and he asserts that state courts should not be distracted by irrelevant considerations drawn from federal constitutional analysis. In a policy-based argument, Respondent Coy maintains that even if the Attorney General's argument as to Article II, Section 6 has merit, the practical effectiveness of the provision may be questioned where "vote trading," if it took place late in an even-numbered year, could be rewarded with a job that began only days or weeks later, *i.e.,* after December 1 (considering only two-year terms of Representatives).

In regard to examining the history of the provision at issue, Senator Mellow dismisses as "tertiary sources" treatises such as that of Judge Woodside. See n3. He quotes from a Supreme Court decision from long before *Edmunds,* stating that the court would disregard copious citation to the debates in the constitutional convention because those statements indicated the views of individual members, not those of the majority who did not talk or of the mass of fellow citizens who voted on the Constitution, and that the court regarded it as safer to construe the Constitution from what appears on its face. *Commonwealth v. Balph,* 111 Pa. 365, 3 A. 220 (1886). Senator Mellow submits that the phrase "during the term for which he may have been elected" in Article II, Section 8, precludes the interpretation of Article II, Section 6 that has been advanced.

**5.** In his later brief the Attorney General argues that Respondent Coy's reliance on *Opinion of the Justices* is misplaced because the case merely held that sitting legislators could be prohibited by statute from receiving a salary for a second office; it did not discuss the effect of resignation or the Delaware Constitution's version of the language at issue in this case.

## III

■■ The Court concludes that the position of the Attorney General and of Senator Jubelirer is correct. First, the four-prong analysis derived from *Edmunds* is the proper approach to interpretations of Constitutional provisions where a ruling has not yet been made by courts of this Commonwealth. *Department of Auditor General v. State Employees' Retirement System,* 836 A.2d 1053 (Pa.Cmwlth.2003) (*Auditor General I*) (citing *Commonwealth v. Cleckley,* 558 Pa. 517, 738 A.2d 427 (1999)). In regard to the text of Article II, Section 6, the Court agrees that the phrase "the time for which he was elected" is most naturally and reasonably interpreted in the manner urged by the Attorney General to mean the end of the constitutionally prescribed term of a Representative. There is no question that Representative Coy was not "elected" to serve until September 2, 2004 but rather to serve until November 30, 2004. The phrase "during the time for which he was elected" logically applies to the remainder of the time when a legislator should have served, even if he or she resigns before the term ends.

■ The Court further agrees that the history cited supports the Attorney General's interpretation. Respondent Coy asserts that deference due to Attorney General opinions was limited by the Supreme Court's statement in *Kremer v. Grant,* 529 Pa. 602, 606 A.2d 433 (1992), that the Secretary of the Commonwealth or his staff erred if they relied upon an Attorney General's opinion regarding the advertising requirement for constitutional amendments rather than the Constitution itself. The Court notes, however, that although opinions of the Attorney General are not binding on the Court, the courts customarily afford great weight to official opinions of the Attorney General. *Auditor General I* (citing *Herskovitz v. State Civil Service Commission,* 111 Pa.Cmwlth. 427, 534 A.2d 160 (1987)). Further, the long-standing and consistent treatment of the Article II, Section 6 prohibition in Attorney General opinions represents an historical practice, and, in addition, the cited opinions on the present issue are well-reasoned and persuasive.

Policy considerations also favor the interpretation advanced by the Attorney General. Senator Mellow cautions the Court against interpreting Article II, Section 6 in a manner that punishes those who choose a career in public service by deeming them ineligible for employment for which they otherwise would be eligible but for their career choice and further asserts that such an interpretation restricts the pool of qualified candidates for statutorily created boards and commissions. The Court's interpretation does nothing of the sort. Service as an elected member of the General Assembly is not merely a career choice but rather is a sacred trust, which is constrained by various constitutional measures. There is no punishment involved in enforcing the plain language of a constitutional provision that a legislator may not be appointed to another civil office during the time that he or she was elected to serve in the legislature. This interpretation in no way constrains those who may wish to leave service in the legislature at the end of their terms and pursue other career choices. It does, however, serve the purpose noted by Judge Woodside and other commentators of insulating legislators from undue pressure and inducements.

■ The final issue that must be resolved is that of relief. The Application for special and summary relief, which was listed for argument, requested several forms of relief, including a declaration that Respondent Coy's September 3, 2004 ap-

pointment as a member of the Gaming Control Board by the Minority Leader of the House of Representatives is in violation of Article II, Section 6 of the Constitution and is null and void ab initio. The Court grants such a declaration. *See Auditor General II* (reiterating the rule that courts may grant summary relief when moving party demonstrates that case is clear and free from doubt, that no genuine issues of material fact exist and that moving party is entitled to relief as a matter of law). Moreover, the Court has been presented with no basis for the Attorney General's request for the grant of a permanent injunction prohibiting and restraining Respondent Coy from occupying a seat on the Gaming Control Board or receiving any compensation or emolument of office whatsoever. The Attorney General's own brief concluded simply with a request that the Court declare Respondent Coy's appointment to be in violation of Article II, Section 6 of the Constitution. The Court discerns no constitutional impediment to Respondent Coy's being appointed to the Gaming Control Board after the expiration of the time for which he was elected, *i.e.,* November 30, 2004, and the Court declines to issue an injunction having such an effect.

For the reasons expressed in this opinion, the Court grants special and summary relief to the Attorney General in the nature of a declaratory judgment that the September 3, 2004 appointment by the Minority Leader of the House of Representatives, H. William DeWeese, of Respondent Coy to the Gaming Control Board was null and void ab initio. In view of the above discussion and the disposition reached in this matter, the Court overrules the remaining preliminary objections.

Judge COHN JUBELIRER and Judge LEAVITT recuse.

### *ORDER*

AND NOW, this 8th day of November, 2004, the Court hereby declares that the appointment of Respondent Jeffrey W. Coy to the Pennsylvania Gaming Control Board by Minority Leader of the House of Representatives, H. William DeWeese, before the end of the time for which Respondent Coy was elected was in violation of Article II, Section 6 of the Pennsylvania Constitution and was null and void ab initio.